WILLIAM H. HAGER *vs.* EDWIN E. CLEVELAND and JOSEPH·M. BASSETT, trading as CLEVELAND & BASSETT.

*Incorporation of a Manufacturing Company under Article 26 of the Code—Individual liability of a Stockholder for a debt of the Company—By what acts a Stockholder is Estopped from denying his Liability—Effect of a transfer by a Stockholder of his stock in a Manufacturing Company, upon his Liability for a Debt of the Company—Evidence.*

Where the requirements prescribed by section 40 of Article 26 of the Code, as necessary to the incorporation of a manufacturing company, are complied with, and the certificate is recorded, the persons who signed and acknowledged it, become a body corporate, entitled to, and possessed of the functions of a corporation as effectually as if the same had been by a direct grant from the State.

Where a stockholder in a manufacturing company, incorporated under Article 26 of the Code of Public General Laws, knowing that the whole capital stock has not been subscribed, participates in the organization of the company, attends its meetings, is one of the directors, and privy to the contracting of a debt by the company, he will not be heard in an action against him to enforce his individual liability for the debt, to the extent of the stock subscribed for by him, to deny the regularity of the organization of the company, or to set up as a defence, a partial subscription of the capital stock.

The transfer by a stockholder of his stock in a manufacturing company, incorporated under Article 26 of the Code, does not exonerate him from personal liability for a debt contracted by the company when he was a stockholder, and before the whole capital stock was paid in; his liability is in the nature of a contract made between the company, its creditor and himself, and is in no way affected by the transfer of his stock.

In an action by a creditor of a manufacturing 'company, incorporated under Article 26 of the Code, against a stockholder to enforce his individual liability for the debt contracted by the company, the books of the corporation relating to its private transactions, are not admissible in evidence.

APPEAL from the Circuit Court for Washington County.

This was an action brought by the appellees under the provisions of sec. 52 of Article 26 of the Code of Public General Laws, to recover of the appellant a debt due them by the Antietam Manufacturing Company of Washington county, and contracted when he was a stockholder in the company. At the trial below, the plaintiffs gave in evidence the certificate of incorporation of the company, and the record thereof; which certificate was filed some time in May, 1867; and proved that the defendant was one of the parties who acknowledged said certificate to be their act and deed. They then gave in evidence three notes, each for the sum of $3,000, payable to the plaintiffs, executed by the president of the manufacturing company in the year 1868, and also an account or accounts due by the company to the plaintiffs; and also gave in evidence the minutes of proceedings of the company, showing its admission of indebtedness to the plaintiffs and authority for executing the notes ; and further gave in evidence a mortgage or deed of trust by the company to William T. Hamilton and others; and further gave in evidence by the treasurer of said company, that the amount of capital stock subscribed to the Company was $92,600, of which the sum of $67,000 was paid in, and that $66,000 of this sum was so paid in before the 5th day of February, 1869 ; that the defendant was a director in the company up to the time he transferred his stock, which was on or about the 10th of February, 1869 ; that the defendant paid up the whole of his stock, amounting to $5,000, as it was called; that the company had a settlement with the plaintiffs and gave notes for the amount due, and that the present indebtedness of the company to them was about $10,000. The plaintiffs then rested their case.

The defendant then gave in evidence certain minutes and proceedings of the company; and further proved that the capital stock was originally fixed at $50,000, and that he was a subscriber for fifty shares, $5,000; that when he signed the

certificate of incorporation the capital stock was fixed at $50,000; that he paid up his stock in full, and that on the 10th day of February, 1869, he transferred it to his son, Jonathan H. Hager, upon the transfer book of the company before the institution of this action.

The plaintiffs then for the purpose of rebutting the testimony of the defendant, proved by a witness that he copied from a paper furnished him by his brother, the certificate of incorporation of the company, and when it was written and read to his brother, he said there was a mistake in it; the capital was to be $150,000, and not $50,000; and that he, the witness, then corrected the mistake by interlining the words "one hundred and," and neglected to make the corresponding correction in the number of shares; that the certificate of incorporation offered in evidence, was the identical paper he so copied and interlined; that the interlineation was made before any name had been subscribed to it; thought that no name was subscribed to the paper from which he made the copy, but was not certain.

Upon all the evidence the plaintiffs submitted the following prayers:

1. If the jury believe that the paper-writing given in evidence as a subscription of stock to the Antietam Manufacturing Company of Washington county, was signed by the parties whose names appear thereto, or any five of them, and that they, or said five of them were, at the time, free white persons, and that they, or said five persons acknowledged the same before John Cook, and that said Cook was at the time a justice of the peace of the State of Maryland, in and for Washington county, and that the said paper was then recorded in the office of the clerk of the Circuit Court for Washington county; and if they shall further believe from the evidence that the defendant was a stockholder in said company, specified in said paper, to the amount of $5,000, or for fifty shares at $100 each, and that, whilst the defendant was such stockholder, the said Antietam Manufacturing Com-

pany of Washington county became indebted to the plaintiffs in the sum of $10,000 or thereabouts, and that the entire amount of said indebtedness was contracted whilst said defendant remained such stockholder, and said debt still continues due and unpaid; and if the jury shall believe from the evidence that the capital stock of said company was not taken or paid up to the full amount specified in said paper-writing, at the time of bringing the plaintiffs' suit or since, then the plaintiffs are entitled to recover from the defendant the said sum of $5,000, the amount of his subscription, and the verdict should be for the plaintiffs for that amount, notwithstanding the jury may believe from the evidence that the defendant transferred his stock before or since the bringing of this suit.

2. [Identical with the first, except that it contained the following clause, which came immediately after the word "*since*" in the twenty-third line of the first prayer:] And shall believe that one-half of said capital stock of $150,000 had not been paid up within one year after the incorporation of said company, or after said paper was left for record as aforesaid.

3. If the jury shall further find, in addition to the facts set forth in the plaintiffs' first prayer, and which is made a part of this, that the interlineation of the words, "one hundred and," in said paper-writing, was on said paper at the time it was acknowledged by the defendant and other signers thereto, specified in the acknowledgment taken before John Cook and thereto appended, then the defendant is not discharged from his liability to the plaintiffs in this action by reason of said interlineation.

4. If the jury shall believe, from the evidence, the facts stated in the first and third prayers of the plaintiffs, and made part of this, that the said paper-writing, with the interlineation therein, was delivered to the clerk of said Circuit Court to be recorded, by the president and directors of said company, or that the same was so delivered with their autho-

rity, then the defendant is not discharged from his liability to the plaintiffs in this action.

The defendant then offered the following prayers:

1. That the plaintiffs, to recover in this action, must first show to the jury that they have taken legal proceedings against the said company to enforce payment of their claim, and have prosecuted the same to judgment, and the plaintiffs having offered no evidence of any such proceeding in this cause, are not entitled to recover.

2. That if the jury find that the capital stock of said company was fixed and limited by the corporation at $50,000, and that the same was all paid in before the institution of this suit, then the plaintiffs are not entitled to recover.

3. That if the jury shall find that the capital stock of said company was fixed and limited by the corporation at $50,000, and shall further find that the same was paid in, one-half in one year, and the other half thereof in two years from and after the incorporation of said company, then the plaintiffs are not entitled to recover; provided, the jury further find that the whole amount of said capital stock was paid in before the institution of this suit.

4. That if the jury find that the whole amount of the capital stock of said corporation was fixed and limited by the original certificate thereof at $50,000, and was so written therein, and that the said certificate so written was, on the 21st of May, 1867, delivered to the clerk of the Circuit Court for Washington county as the Act of incorporation, and that the said clerk so received and endorsed the same for record, and that afterwards, and before the actual recording thereof, the directors of said company, or certain of them, and without a general meeting of the stockholders of said company called for that purpose, increased the capital stock of said company from $50,000 to $150,000, and interlined such increase of stock in said original certificate, after the same was as aforesaid delivered to the said clerk and endorsed as aforesaid, but before the actual recording of the same, then such alteration of said

certificate and increase of said stock is void, and said capital stock remains fixed at $50,000, as first written in said certificate, if so found; and if the jury further find that the said capital stock was paid in, one-half thereof in one year, and the other half thereof in two years, from the 21st of May, 1867, when the same was incorporated, and shall in addition find that the whole amount of the capital stock, so fixed, was paid in before the institution of this suit, then the plaintiffs are not entitled to recover.

5. If the jury find that the defendant, before the bringing of this suit, in good faith assigned the stock held by him on the books of said company, in accordance with the by-laws thereof, and that at the time of the bringing of this suit he was not a stockholder in said company, then the plaintiffs are not entitled to recover.

6. That the certificate or paper purporting to be the article of incorporation of the Antietam Manufacturing Company of Washington county, given in evidence to the jury, is not a good and sufficient incorporation of said company, and that said company is not legally incorporated, and the plaintiffs are not entitled to recover.

7. That the certificate of incorporation of said company, and the record thereof given in evidence, by the legal construction thereof, fixes and limits the capital stock of said company at fifty thousand dollars, and that if the jury believe the same was fully paid in before the institution of this suit, then the plaintiffs are not entitled to recover.

8. If the jury find that the interlineation "one hundred and," in the certificate of incorporation given in evidence, was made after the signing and acknowledging of the same by the defendant, and without his consent, then the plaintiffs are not entitled to recover with this qualification, without his consent, either before or since said interlineation.

9. That the signing or subscription by the defendant to the original certificate of incorporation given in evidence to the jury, and as thereunto signed or subscribed with the number

of shares and amount of stock extended to his name, is not a subscription to the capital stock of said company, and does not constitute the defendant a stockholder therein, but that such signing or subscription is wholly for the purposes of incorporation, and the plaintiffs are not entitled to recover.

The Court (MOTTER and PERRY, J.) granted all the prayers of the plaintiffs and rejected all those of the defendant, except the fourth and eighth; but granted the fourth with the following qualification:

" Unless they shall further find that at the time of such withdrawal, if they should find it was withdrawn, and for the purpose aforesaid, the said Hager was one of the directors of said corporation, and was acting and consenting to said withdrawal for the purpose aforesaid."

The defendant excepted to the granting of the prayers of the plaintiffs and to the rejection of his prayers, as also to the qualification attached to his fourth prayer.

Three exceptions were taken to the admissibility of evidence; two by the plaintiffs and one by the defendant. The defendant excepted to the admission of certain evidence, including certain minutes of proceedings of the company.

The verdict and judgment being for the plaintiffs, the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, BRENT, GRASON MILLER and ROBINSON, J.

*William T. Hamilton,* for the appellant.

By section 40 of Article 26 of the Code, any five or more persons can organize a company by doing what is required by this section and section 41.

The amount of stock being fixed in the articles of incorporation, and the number of shares, the next step is the subscription for shares of stock—the subscription of stock is to give life and legal power to the corporation. Unless the stock is taken as fixed by the articles, there is no corporation

in being able to do anything.   It is an inanimate thing until the breath of life is breathed into it.   The stock is the life. Any act, involving responsibility, done by anybody connected with the corporation before it has its legal being perfected by the subscription of stock, is the act of an individual, and as such only can be held responsible, or hold others responsible.

Unless it is otherwise provided in the articles under this law, the amount of stock fixed in the articles must be fully taken or subscribed before the corporation has this perfect legal being or organic life.   *Hughes vs. Antietam Manuf. Co.,* 34 *Md.,* 316; 1 *Redfield on Railways, Chapt.* 4, *sec.* 1, *page* 63, *top* 64; *Hudson vs. Carman,* 41 *Maine,* 84; *Franklin Fire Ins. Co. vs. Hart,* 31 *Md.,* 60.

Section 52 is the one imposing personal liability upon the stockholders in certain cases.   This section enlarges to some extent the responsibility of stockholders.   Under this section, in order to make a stockholder liable, he must be a stock-holder in the full sense of that term—invested with all the powers, and liable to all the responsibilities of a stockholder.

The section says: *"All the stockholders of any such corporation* shall be, &c." *"Any such corporation."*   It must therefore be a corporation having organic life, for it is so pro-vided by the Act that it should have such organic life.

He is only liable to an amount equal to the amount of stock held by him.

He is only liable until all the stock be paid in, within the time limited; or, in other words, he is not liable for anything if the stock is all paid in, as it should be; and this being so, it is the end of that section and of this liability clause, and the stockholder stands, in this respect, upon the old law

The prayers of the appellees put this fact to be found by the jury, as one of the series of facts entitling the appellees to recover, namely: That if the jury believe from the evidence (among other things) that the capital stock of said company *was not taken,* &c., their so finding, the appellees are entitled to recover.   Here the very fact which denies to the company

organic life, is the fact relied on to recover against a subscriber for stock. The evidence shows that the capital stock was never taken—only $92,600 being taken of the $150,000 fixed by the articles. It being proven, admitted and urged by the appellees that the capital stock was not taken, and at the same time relied upon as one of the facts in their prayers to entitle them to recover, in what way, and how can this fact impose liability upon the appellant? It is well settled that, unless otherwise provided, either in the law or the articles, the whole stock must be subscribed before any subscriber of stock can be held liable to the company. By the articles of this company, and under the law, the whole of the capital stock must be subscribed before any subscriber for stock can be held liable to the company. *Hughes vs. Antietam Manf. Co.,* 34 *Md.,* 316.

And further, the capital stock of such a corporation must all be subscribed to give to it organic life. 1 *Redfield on Railways, ch.* 4, *p.* 63.

The relation of the appellant to this company is fixed by adjudication—if he had not paid his subscription for stock, he would not be liable to pay it—he is entirely free from all liability as a stockholder to the company. Then what is his relation to the creditors of this company as a stockholder, for in that character alone is he sued in this action? His relation is not different, nor is his liability extended as a stockholder in respect to the creditors of this corporation, or pretended corporation, and for the reason: First. That the creditor can only claim through the corporation from a stockholder. The first step in his cause against a stockholder is to show a corporation legally organized, having, in fact, organic life, a perfect legal entity—the formal organization, with the requisite subscribers for all the stock fixed by the articles—stockholders subject to all the responsibilities of the corporation and of the law, and possessing all the powers and rights of stockholders, for they are as material as in other obligations where mutality is required.

Section 52, only provides for the responsibility of stockholders until all the stock is paid in, or until it is dissolved, and if paid in within the time limited, or dissolved, the creditor is left to his only other recourse—the capital. The credit in fact is given to the company, and to the capital of the company.

This section assumes, when it undertakes to impose liabilities upon individual stockholders, that *all the stock was taken*, and that thereby it is a perfect corporation. It does not state that a subscriber for stock shall be liable *if the stock be not taken*, but only liable "*if not paid in*"—assuming of course that it is all taken, and very properly so assuming, for the Legislature may well be presumed to have meant that a corporation ought only to have organic life when all the stock was subscribed, as it most certainly intended that it should all be paid in, by fixing individual liability until it was done. Before any liability can attach to a subscriber for stock as a stockholder—by reason of a contract with this company—the whole stock must have been taken; this not having been done, the prayers of the appellees are erroneous.

Again, this section declares that "all the stockholders of any such corporation shall be," &c., until the whole amount of the capital stock be paid in, &c. Here the most important question arises, who is a stockholder under this subscription and corporation? This section is emphatic—the stockholder, not a subscriber merely, but the stockholder, pure, simple and perfect, is only liable to the creditor. Who then is a stockholder? He must be one who is in full relation to the company, invested with all the rights and powers of the stockholders, and subject to all the liabilities, responsibilities and remedies as such, under the law and the articles; then is he such a person as contemplated by the Act for liability. Nothing less will do. The whole Act deals with a stockholder—nothing less, not a mere subscriber—an inchoate stockholder, but with one that is perfect under the law.

Hager *vs.* Cleveland & Bassett.

The appellees' first and second prayers put the proposition, "That if the jury find, among other things necessary for a recovery, that the debt sued for was contracted whilst the appellant was a stockholder, the verdict must be against him, *although* the jury should further find that he had transferred his stock before the bringing of this suit." And the appellant's fifth prayer puts the proposition as follows: "That if the jury find that the appellant, before the bringing of this suit, in good fath, transferred the stock held by him, and that at the time this suit was brought, he was not a stockholder, then the appellees are not entitled to recover."

In these prayers is raised the question of the right to transfer stock free from any liability for a debt contracted by the corporation at the time it was held. Assuming that the corporation was in full life and legal vigor, and that the party was a stockholder in fact and in law, what was his right to transfer and thus cease to be a stockholder and a member of the company; and what, if any, liabilities may follow him?

Section 50, provides the absolute right to transfer, and limits it only in one respect, and that is, that before transfer be made, all previous calls shall have been paid. This is the only limitation upon this absolute right. About this right of transfer there is no question; it is one of the very elements of corporations, and without it they could not exist. No personal liability follows the stockholder under section fifty. Does it attach to him and follow him under the 52d section? These sections are to be construed together and full effect given to both, if possible. The 52d section provides that "*All the stockholders of any such corporation* shall be severally and individually liable," &c. The true construction of this language is that all stockholders being so when the suit is brought, are only liable.

If the appellant transferred his stock, in good faith, before suit brought, he is not liable in this suit, and the Court below was in error in granting the first and second prayers of the appellees and rejecting the fifth prayer of the appellant.

Hager *vs.* Cleveland & Bassett.

*Curtis vs. Harlow,* 12 *Metcalf,* 3, 4; *Bond vs. Appleton,* 8 *Mass.,* 474; *Middletown Bank vs. Magill,* 5 *Conn.,* 28, 63, 71; 17 *Mass.,* 64; 17 *Mass.,* 330; *Moss vs. Oakley,* 2 *Hill,* 268.

*Attorney General Syester,* for the appellees.

The mode pointed out in the statute, by which the corporation is to obtain organic life, has been pursued; every condition precedent has been fairly complied with, so far as to enable it to deal with third parties, and to bind itself by its own contracts; and it is a corporation so far as third parties are concerned. *Corning vs. McCullough,* 1 *Comst.,* 47; *Abbott vs. Aspinwall,* 26 *Barb.,* 202, 206; *Palmer vs. Lawrence,* 3 *Sandf., (S. C.)* 168, 169; *McDougald vs. Bellamy,* 18 *Ga.,* 427, 428; *McDougall vs. The Jersey Imp. Hotel Co.,* 10 *Jur., N. S.,* 1043; *Ornamental Pyrographic Woodwork Company vs. Brown,* 9 *Jur., N. S.,* 578; *Same case in* 2 *Hurl. & Colt.,* 63.

There is some difference between the situation of a party defending against a suit for unpaid subscriptions, and that of one who is defending against the claims of the company's creditors; and especially is there a wide difference, when the members and subscribers have stood by silent and seen the company enter into heavy contracts, by purchasing large and valuable real estate; by improvements in the erection of buildings, and the expenditure of large sums of money in fitting the property for the purposes of the organization. If the subscriber has knowledge of such things, and remains silent, and thereby acquiesces therein, he will be regarded as having *waived his right to such a defense,* even in an action against him for an unpaid subscription. *Contoocook V. R. R. vs. Barker,* 22 *N. H.,* 371; *Pitchford vs. Davis,* 5 *Mess. & W.,* 2; *Norwich & Loft. Co. vs. Theobald,* 1 *Moody & Malkin,* 151; *Smith vs. Heidecker,* 39 *Mo.,* 157, *West Winsted Savings Bank, &c., vs. Ford,* 27 *Conn.,* 289; *McHose vs. Wheeler,* 45 *Penn.,* 32; *Cabot & West Springfield Bridge vs. Chapin, et al.,* 6 *Cush.,* 53.

Until the whole amount of capital stock fixed by the charter is paid up, or until dissolution, (section 52) the *stockholders are liable* for the debts, &c., &c.

The appellant was one of the original movers and promoters of the corporation and its schemes. He was one of the directors for the first year, during which time the company was in the public and notorious user of its franchise, making contracts, purchasing lands and water-power, purchasing materials and erecting buildings thereon; and being a *director, one of the very parties to* this public user. He also was active in obtaining subscriptions at home and abroad, attended the meetings of the directors, endorsed and seconded every measure looking to the expenditure of money for the common purpose, and as late as February, 1869, nearly one year after the contract sued on in this case, he distinctly and unequivocally recognized the existence of the company by transferring, *for value,* some fifty shares of the capital stock for which he had subscribed and paid.

Is he not now estopped from denying the validity of the corporate acts to which he was a party, as also the " *organic life* " which he proclaimed to the world? *Palmer vs. Lawrence,* 3 *Sandf., S. C.,* 171, 169; *McDougald vs. Bellamy,* 18 *Ga.,* 428; *McDougald vs. Lane,* 18 *Ga.,* 444; *Tarbell vs. Page,* 24 *Ill.,* 46; *McHose vs. Wheeler,* 45 *Pa.,* 32; *Smith vs. Heiderick,* 39 *Mo.,* 162; *Pitchford vs. Davis,* 5 *Mees. & Wels.,* 2; *Norwich and Loft. Co. vs. Theobald,* 1 *Moody & Malkin,* 151.

Under section 52 of Article 26 of the Code, imposing an individual liability upon the stockholders in a manufacturing company, upon the consummation of a contract between the creditor and the company, the liability of the stockholder attaches and becomes perfect. On this liability a right of action arises in behalf of the creditor, *eo instanti* the making of the contract, which exists for his benefit, not only until the capital stock is fully paid, but until the certificate is made and filed, as is required by section 53. *Corning vs. McCullough,*

1 *Comst.,* 47; *Morgan vs. N. York and Albany R. R. Co.,* 10 *Paige,* 290; *Fisk vs. Keeseville Manufac. Co.,* 10 *Paige,* 592; *Eaton vs. Aspinwall,* 6 *Duer,* 176, (*S. C.,* 3 *Abb. Prac.,* 417, and 13 *How. Prac.,* 184;) *Stedman vs. Eveleth,* 6 *Met.,* 114; *Angell & Ames on Corps.,* (7 *ed.*) sec. 611; *Eaton vs. Aspinwall,* 19 *N. Y.,* 119; *Abbott vs. Aspinwall,* 26 *Barb.,* 202.

The stockholder being "*individually* and *severally* liable for all debts contracted until," &c., those who are stockholders at the time the debt is contracted are liable therefor; and a creditor of the company may sue any one who was a holder of stock at the making of the contract or creation of the debt. It is the several and personal liability of the particular stockholders aggregated which gives credit to the company, and on the faith of which the creditor contracts. *Corning vs. McCullough,* 1 *N. Y.,* 47; *Moss vs. Oakley,* 2 *Hill,* 265; *Judson vs. Rossie Galena Co.,* 9 *Paige,* 598; *Chesley vs. Pierce,* 32 *N. H.,* 388.

No transfer therefore of stock by a holder, within the limit of time allowed by the Code for the payment of the capital stock, will release him from the liability which he assumes, in becoming a stockholder, for the payment of any debt contracted, which is not in excess of the amount of stock held by him, or to the extent of his stock, unless the capital stock be fully paid, *and the certificate thereof be made and filed as required.*

No informality in the organization of a company will avail to release a stockholder from his liability to creditors, if he has engaged in acts of *user* of the corporation *de facto. Abbott vs. Aspinwall,* 26 *Barb.,* 202; *Eaton vs. Aspinwall,* 19 *N. Y.,* 119; *McHose & Co. vs. Wheeler,* 45 *Penna.,* 32; *Lane vs. Brainard,* 30 *Conn.,* 565, 576; *Ellis vs. Schmœck,* 5 *Bing.,* 521; *Harvey & Reynolds vs. Kay,* 9 *Barn. & Creswell,* 356; *Angell & Ames on Corps.,* (7 *edition*) sec. 611; *Doubleday vs. Muskett,* 7 *Bing.,* 110.

The appellees' exception to the introduction of the records of the company, as evidence in this cause, was well taken.

Being strangers to these records, and having no right to require and no power to compel their inspection, they are not chargeable with anything appearing there. The principle is fully supported by authority, that the books of a corporation are not evidence against strangers. 1 *Greenleaf on Ev.*, sec. 493.; *Angell & Ames .on Corps.*, (7 ed.) secs. 679, 682; *Chase vs. Sycamore & Courtland R. R. Co.*, 38 *Ills.*, 215; *Marriage vs. Lawrence*, 3 *Barn. & Ald.*, 142.

ROBINSON J., delivered the opinion of the Court.

This suit is brought under the provisions of Article 26, section 52, of the Code, to recover of the appellant, a debt due by *The Antietam Manufacturing Company of Washington county*, and contracted when he was a stockholder in said company.

The defence rests mainly upon two grounds—1st. That the amount of capital stock fixed by the articles of association and recorded certificate not being taken, the company never was incorporated, and therefore had no power to create debts, binding on the subscribers; and 2dly. That the appellant had transferred his stock prior to the institution of this suit.

The 40th section of Article 26, of the Code, prescribes all the *requirements* necessary to the incorporation of manufacturing companies, and when these are fully complied with, and the certificate recorded, the associates become a *corporate body*, entitled to and possessed of the franchises of a corporation, as effectually as if the same had been by a direct grant from the State. *Sec.* 41, *Art.* 26. In *Hughes vs. The Antietam Manuf. Co.*, 34 *Md.*, 316, it was decided that these requirements had been complied with, and the corporate existence of the company is therefore no longer an open question. There is a wide difference between the existence of the company as a *corporate body*, and the *liability of parties* for their subscription to its capital stock. As a general rule, where the capital stock and number of shares are fixed in the recorded certificate, no valid assessments or calls can be made on subscribers

until the whole capital stock is taken, unless there be a provision to that effect, either in the recorded certificate, or general law under which the company is incorporated; and in such a case, the subscription may be considered to that extent as conditional. It is a condition, however, which the subscribers may waive, and with their assent the company cannot only organize, but do all other things incident to, and necessary for the prosecution of the particular business for which it was incorporated. This waiver may be either *express* or *implied* from the acts and declarations of the subscribers. If knowing the whole capital stock has not been taken, they attend the meetings of the company, coöperate in the votes for the expenditure of money—for the purchase of property—for the making of contracts, and other acts which could only be properly done upon the assumption that the subscribers intended to proceed with the stock partially taken up, they would be estopped from setting up such a defence. *Cabot and West Springfield Bridge Co. vs. Chapin, and others*, 6 *Cushing*, 50.

In the case before us, then, if the appellant, knowing that the whole capital stock had not been subscribed, participated in the organization of the company, attended its meetings, was one of the directors, and privy to the purchase of the machinery, for the payment of which this suit was brought, he will not be heard now to deny the regularity of the organization, or to set up as a defence a partial subscription of the capital stock.

This brings us to the second ground of defence: whether the transfer of stock by the appellant, exonerates him from personal liability for a debt contracted when he was a stockholder, and before the whole capital stock was paid in?

The language of the 52d section, it must be admitted, is general in its terms, and does not in words declare whether the individual liability shall attach to such as are stockholders at the time the debt is contracted, or to those holding stock at the time the suit is brought. It is obvious

however that the protection of the creditor was the paramount object the Legislature had in view, and the section in question, ought to receive such a construction as will best accomplish this object. In conferring the rights and franchises of a corporation upon companies incorporated under Article 26, the Legislature has affixed as a condition precedent to the exercise thereof, that the stockholders shall be individually liable for the debts of the company until the whole capital stock is fully paid in. The original stockholders, by their acceptance of the charter, and subsequent purchasers in becoming members, must be considered as assenting to the terms and conditions thus imposed, and it is upon the faith of these terms and conditions that the public are invited to give credit to the company. Parties therefore dealing with the corporation, rely upon this individual responsibility of shareholders, who are personally known to them, as well as upon the responsibility of the company itself. And at a time when these corporations are multiplied to an almost indefinite extent, embracing every department of trade and business in which the most sanguine can hope for success, parties dealing with the corporation may rely with much more confidence upon the personal liability of stockholders, than upon the property and assets of the company. Accordingly in *Norris vs. Wrenschall,* 34 *Md.,* 492, this liability of the stockholder and its corresponding obligation to pay the debts of the company was held to be in the nature of a *contract.* The Court say: " It is a debt under the statute, due from the stockholder to the creditor, springing out of and coëxistent with the contract between the corporation and the creditor."

If so, if it be a debt due from the stockholder to the creditor, coëxistent with the contract by the company, it 'is clear that no act by the stockholder, without the consent of the creditor, can exonerate him from the liability thus incurred. The relation of stockholder creates a perfect legal obligation to pay the debts contracted by the company, until the whole

capital shall have been paid, and it is upon the faith of this perfect legal obligation, that parties deal with the company. The liability of a stockholder, being therefore in the nature of a contract made between the company, the creditor and himself, we are of opinion that it continues, and is in no manner affected by the mere transfer of his stock. This construction is fully warranted by the language of the statute, and best accomplishes the purpose of the Legislature, namely, the protection and security of creditors. If the construction contended for by the appellant be correct, then the liability imposed by the section in question would necessarily be conditional; that is, provided the creditor commenced his suit prior to the transfer of the stock. We find nothing in the language of the statute, nor in the purposes for which it was passed, to warrant such a construction. Moreover it denies to creditors the right to look for payment to such stockholders as were alone known to them at the time the debt was contracted, and compels them to seek payment of persons whom they could by no possibility know, and whom if known, they might have refused credit to the corporation.

The construction we have adopted is also just and equitable as between stockholders themselves. If personal liability is to rest anywhere, it surely ought to be with those who were stockholders at the time the debt was contracted; who had the means of knowing the extent and magnitude of the same, and who could have exercised an influence in the management of the affairs of the company, rather than upon those who became shareholders subsequent to the creation of the debt, and who are in no manner responsible for the same.

The prayers offered by the plaintiffs are erroneous, because they assume the liability of the defendant for his subscription, without regard to whether the whole capital stock of the company was taken, or whether he had waived his right to rely upon a partial subscription as a defence to the action.

The defendant's prayers were properly rejected. We fully concur in the modification of the fourth prayer. It certainly

presented the law in as favorable light as the defendant had any right to expect. If he consented to the withdrawal and alteration of the certificate, it is hardly necessary to say that he will be estopped from relying on such withdrawal or alteration, as a defence to an action brought by a creditor for machinery sold to the company.

We are also of opinion that the Court erred in admitting the corporation books in evidence. In some instances, it is true, they may be offered in evidence either for or against the corporation, where the acts recorded are of a public nature, and when the entries have been made by a proper officer. But when they relate to the private transactions of the company, they are, as a general rule, inadmissible, except perhaps in actions between the members.

For these reasons the judgment below will be reversed and a new trial awarded.

*Judgment reversed and*
*new trial awarded.*

(Decided 20th June, 1872.)