HASKELL, *Assignee*, v. WORTHINGTON, *Appellant.*

1. **Corporation, Existence of, When not Collaterally Assailable.** The validity of the existence of a corporation, organized under Wagner's Statutes, chapter 37, article 7, sections 1 and 2, and in conformity with its provisions, cannot be assailed in a collateral proceeding.

2. **Corporation : SUBSCRIPTION TO STOCK.** Defendant subscribed to the stock of a corporation, the name of which was stated in the subscription paper. When the company organized, the words, "of St. Louis," were added to its name. *Held,* no defence to an action on the subscription.

3. ———— : ————. It is no defence to an action on a stock subscription by a company organized to carry on the business contemplated in the subscription, and engaged in that business only, that it might, under the act of incorporation, have carried on other business.

Haskell v. Worthington.

4. ———— : ————. It is no defence to an action on a stock subscription, that the defendant was induced to subscribe by the false representation that certain of his neighbors and friends had agreed to take stock in the corporation.

5. ———— : ————. Where a corporation, incorporated under the general law requiring that the amount of its stock be stated in the certificate of incorporation, enters into active business with less capital stock subscribed than the amount thus stated, a subscriber, who is not estopped by his acts from making such defence, cannot be held to his subscription.

*Appeal from St. Louis City Circuit Court.*—HON. W. H. HORNER, Judge.

REVERSED AND REMANDED.

*Hough, Overall & Judson* for appellant.

1) The court erred in giving the instruction to the effect that the plaintiff was entitled to recover the full amount of his claim and interest. (2) The finding of the court was inconsistent with the instructions or declarations of law given at the instance of the defendant. (a) The court gave the instructions to the effect that the plaintiff had only the rights that his assignor had, and that the burden of proving the due organization of the corporation was on the plaintiff, yet treated the case from beginning to end as if the plaintiff was a trustee of innocent creditors, and that defendant could bring the legality of the organization into question only by "a direct proceeding." (b) It is impossible to reconcile the finding of the court with the third instruction given for defendant. There was no conflict of testimony on those points at all ; the plaintiff himself testified, as did also the defendant, Mr. Sells, and Mr. Williams, that the only object of the corporation contemplated in that subscription list was to manufacture cotton-seed oil. But

the objects of the plaintiff's assignor, as stated in the articles of association, were not only to manufacture oil from cotton seed, but from any other substance, and not only to manufacture oils, but to manufacture anything that could be made out of cotton or cotton seed, and to trade and traffic in the same. Under this charter the company could have operated cotton mills and indulged in manufacturing to a great extent and variety. *Dorris v. Sweeney*, 60 N. Y. 463; *Moore v. Hutchinson*, 69 Mo. 430. (3) The court erred in refusing to give the instructions asked by the defendant. The other instructions asked by defendant and refused seem quite too plain for argument, and the evidence made the theory of each of them applicable to the defendant's case. (4) The court erred in receiving illegal testimony offered by the plaintiff. (*a*) The articles of association and certificate of incorporation showed on their face they were not the articles of association and certificate of incorporation of the company contemplated in the contract sued on. (*b*) The minutes of the proceedings of the meetings of the so-called "corporators," at which the corporation is claimed to have been organized, were incompetent. It does not purport even to be the action of the stockholders. It is the act of unauthorized persons, so far as the parties to the contract sued on are concerned. (*c*) The testimony as to some of the subscribers having paid their subscriptions after the alleged organization, and two others being sued and compelled to pay after the assignment, was irrelevant. (*d*) The letter purporting to have been written by Stokes was incompetent. (5) The court erred in rejecting legal testimony offered by defendant. (*a*) The defendant offered to prove by Miles Sells that his (Sells') subscription was fictitious, as set forth in the answer, but the court rejected the evidence. (*b*) The court refused to allow the defendant to testify as to the contents of a letter alleged to have been written by him to Kay. 1 Greenl. on Evid. 464.

*C. P. & J. D. Johnson* for respondent.

(1) The corporate existence of the company cannot be questioned in this proceeding. *City v. Shields*, 62 Mo. 252. (2) The rule with reference to enforcing payment of subscriptions is that, where the statute or act of incorporation authorizes a company organized under it to go into operation before the entire capital is subscribed, then such company may begin operations and call in subscriptions before all the stock is taken. The following authorities sustain these propositions. *Sedalia v. Abel*, 17 Mo. App. 649 ; *Jewett v. Railroad*, 34 Ohio St. 607 ; *Emmitt v. Railroad*, 31 Ohio St. 26 ; *Railroad v. Preston*, 35 Iowa, 118 ; *Livesey v. Omaha*, 5 Neb. ; *Resseler v. Barton*, 16 N. Y. 459 ; *Hoagland v. Railroad*, 18 Ind. 455 ; Rorer on Railroads, 47 ; *Central v. Clemens*, 16 Mo. 364. (3) The representations if false, that certain friends or neighbors of the appellant had promised to subscribe for shares of stock in the company, do not relieve appellant from liability. (*a*) There can be no relief against fraud which is not operative, and in its effect produces no injury or loss to the party seeking redress on account of the same. 2 Pars. on Cont. 769 ; *Cunningham v. Edgefield*, 2 Head.; 29 ; *Chouteau v. Floyd*, 74 Mo. 286. (*b*) The representations were immaterial, and misstatements, to relieve from a contract of the kind in suit, must be of some material matter of fact. *Denton v. McNeil*, L. R. 2 Eq. 352 ; *Hollows v. Turney*, L. R. 3 Ch. 467. (*c*) The alleged representations were with regard to the future. Misrepresentations as to something to be done or to happen in the future afford no ground for the rescission of the contract. *Voorhis v. Smith*, 11 Mo. App. 112, and cas. cit. ; *Sawyer v. Prickett*, 86 U. S. 160. (*d*) It is within the power of the defendant to ascertain the truth or falsity of these representations before signing the contract. This

he made no effort to do, and failed to exercise ordinary diligence in the premises. If the truth or falsity of the representations might have been tested by ordinary diligence upon appellant's part, it was his duty to use such diligence. *Moore v. Turbeville*, 2 Bibb, 602 ; *Saunders v. Hatterman*, 2 Ired. 32 ; *Farrar v. Alsten*, 1 Dev. 69 ; *Talton v. Hood*, 34 Pa. St. 365 ; *Conn v. Bailey*, 24 Vt. 478 ; 2 Kent's Com. 622. (4) The fact that appellant did not participate in the organization of the company, nor receive a certificate of the stock, nor notice of the time of the organization of the company, nor notice of the making of the assessment, did not operate as a release of his liability as a stockholder. By means of his subscription he became a stockholder. *Schaeffer v. Ins. Co.*, 46 Mo. 250. And the corporation cannot release a stockholder from payment for his stock subscription by express agreement, much less by acts of omission, especially when the rights of creditors' have intervened. *Chouteau v. Floyd*, 74 Mo. 291 ; *Chouteau v. Dean*, 7 Mo. App. 214 ; *Webster v. Upton*, 91 U. S. 71 ; *Slee v. Bloom*, 19 Johns. 456 ; *Bedford v. Bowser*, 48 Pa. St. 37 ; *Burke v. Smith*, 16 Wall. 394 ; *Lake Ontario v. Mason*, 16 N. Y. 451 ; *Penobscott v. Dunn*, 39 Me. 587.

BRACE, J.—This action was instituted by the plaintiff as assignee of "The Missouri Cotton-Seed Oil Company of St. Louis," to recover the sum of twenty-five hundred dollars, the par value of twenty-five shares, which it is alleged in the petition the defendant subscribed to the capital stock of said company by the following written contract :

"We, the undersigned, hereby severally subscribe for the number of shares set opposite our respective names to the capital stock of 'The Missouri Cotton-Seed Oil Company,' a company to be organized under the laws of the state of Missouri, and we severally agree

to pay the said company the sum of one hundred dollars on each share. Twenty-five per cent. to be paid on organization of the company; twenty-five per cent. to be paid on first day of September; fifty per cent. to be paid on the first day of October, or as soon thereafter as the board of directors shall call for it to be paid in.

"Dated this 28th day of July, 1879.

SHARES.

| | | |
|---|---|---|
| 200 | Wm. V. Kay | $20,000 |
| 50 | John B. Tilden | 5,000 |
| 50 | H. C. McNiel, Friars P., Miss | 5,000 |
| 50 | Calvin Haskell | 5,000 |
| 10 | Miles Sells | 1,000 |
| 10 | G. J. Shaw | 1,000 |
| 10 | Web. M. Samuel | 1,000 |
| 20 | W. H. Waters | 2,000 |
| 10 | Given Campbell | 1,000 |
| 25 | Chas. T. Worthington, Leota, Miss. | 2,500 " |

The defendant admitted that he signed the subscription paper, but denies that a company was ever, in pursuance thereof, organized under the laws of the state of Missouri; avers that the corporation pretended to have been organized was not the corporation contemplated by the subscribers to said paper, and that his signature thereto was obtained by fraud. To show that plaintiff's assignor was incorporated and organized under the laws of Missouri, and was the company contemplated by the subscription paper, and entitled to recover thereon, the following certificates of association, and incorporation, and proceedings thereunder, were introduced in evidence:

"It is hereby certified by the undersigned, William V. Kay, John B. Tilden, and John Goodin, with the purpose of having, for themselves and those who may hereafter become associated with them, all the powers of a corporation under the laws of the state of Missouri, for carrying on a manufacturing and business

company, as follows: First, the name of the company being created shall be a body corporate, by the name of The Missouri Cotton-Seed Oil Company of Saint Louis; second, the objects for which this company is formed is the manufacture of oils from cotton seed and other substance, the refinement and purchase and sales of oils and materials for making the same, and generally for manufacturing oils and such substances as may be made therefrom, and the dealing in the same; also to manufacture and deal in all articles that may be made from cotton and cotton seed; third, the amount of the capital stock of said company shall be fifty thousand dollars; fourth, the stock of said company shall be divided into shares, to-wit, five hundred shares of one hundred dollars each; fifth, the affairs of said company shall be managed by a board of five directors, and William V. Kay, John B. Tilden, John Goodin, Web. M. Samuel, and John Q. Hart, shall constitute the first board of directors, and manage the affairs of said company for the first year; sixth, the business operations of said company shall be carried on in Saint Louis city; seventh, this corporation shall have succession by the name aforesaid for a period of fifty years.

"In witness of all which, we have hereunto signed our names, and given our true residence, this twenty-third day of September, A. D., 1879.

"WILLIAM V. KAY, Chicago, Ills.
"JOHN B. TILDEN, St. Louis, Mo.
"JOHN GOODIN, St. Louis, Mo."

The document was duly acknowledged and filed for record on the twenty-third of September, 1879.

"CERTIFICATE OF CORPORATE EXISTENCE.

"Whereas, William V. Kay, John B. Tilden, and John Goodin have filed in this office a certificate in writing as provided by law, and have in all respects complied with the requirements of the law governing

the formation of private corporations for manufacturing and business purposes. Now, therefore, I, Michael K. McGrath, secretary of state, of the state of Missouri, in virtue and by authority of law, do hereby certify that said parties, their associates and successors have become a body politic and corporate, and are duly organized under the name of 'The Missouri Cotton-Seed Oil Company of St. Louis,' and have all the rights and priveleges granted to manufacturing and business corporations under the laws of this state. In testimony whereof I have hereunto set my hand and affixed the great seal of the state of Missouri, done at Jefferson City this twenty-seventh day of September, 1879.

" MICHAEL K. McGRATH,

[Seal.]                    " Secretary of State."

On the twenty-ninth of September, 1879, Messrs. Kay, Tilden, Goodin, and Hart, a majority of those designated to constitute the first board of directors in the certificate, met, elected Kay, president, and Hart, secretary *pro tem.*, read the recorded certificate and certificate of incorporation, and declared the association perfected, and thereupon proceeded to adopt a series of. by-laws, among others the following :

" Art. 10. The capital stock shall be paid in upon such assessments and at such place as the board of directors may order, a written or printed notice of which shall be given each stockholder by the secretary, and any subscriber who fails to pay any assessment so ordered, after thirty days notice, shall forfeit to the company the amount (if any) already paid on his stock."

After the adoption of the by-laws, the directors proceeded to ballot for officers, and William V. Kay was elected president and treasurer ; the election of secretary was postponed, and, "on motion it was ordered that the call of the stock of this corporation be made as follows : Fifty per cent. payable on the first day of October, 1879 ; twenty-five per cent. payable on the fifteenth day

of October, 1879 ; twenty-five per cent. on the first day
of November, 1879 ; and that the secretary *pro tem.* notify
the subscribers to that effect.'' In October, 1879, the
company leased premises and commenced business with
second-hand machinery brought by Kay from Chicago,
with which his capital stock and part of Tilden's was
paid for. Some of the other subscribers paid for their
stock, and some did not. The company continued in
business until January, 1881, when it became insolvent
and made an assignment. Plaintiff is the assignee.
There was no evidence tending to show that either Goodin
or Hart were subscribers for stock or stockholders in the
company, except their participation in the proceedings
recited, one as a signer to the certificate for incorpora-
tion, and both as directors of the company, and who,
with Kay and Tilden, were the men, so far as the pro-
ceedings show, who alone organized the company,
passed the by-laws, and made the call.

Kay and Tilden were the promoters of the enter-
prise ; the defendant, who was a planter, being in Miss-
issippi, signed the subscription paper while temporarily
in St. Louis, at the solicitation of Tilden. The capital
stock of the company was to be fifty thousand dollars ;
the defendant was the last subscriber to the stock.
When he subscribed for twenty-five shares, there was
only forty-three thousand five hundred dollars of the
stock subscribed for, including his subscription, and so
far as the evidence in this record shows, there never was
another dollar of stock either subscribed for or taken.
With this subscription paper in hand, Kay and Tilden
proceeded to get themselves and Goodin incorporated by
the name of The Missouri Cotton-Seed Oil Company of
St. Louis, with a capital stock of fifty thousand dollars,
divided into five hundred shares of one hundred dollars
each, as stated in their certificate, and then, with the
assistance of Hart, they effect the organization as stated,
and make the call. The company was incorporated

under the provision of sections 1 and 2, of article 7, chapter 37, Wagner's Statutes, and in conformity to the requirements of those provisions, and its corporate existence cannot be questioned in this collateral proceeding. *St. Louis v. Shields*, 62 Mo. 247.

The defendant, however, contends that plaintiff's assignor is not the company contemplated in the subscription paper which he signed, and points to the name of the company and its purpose, as stated in the certificate for incorporation, in support of his contention. The name of the company is the same as that designated in the subscription paper ; the addition of the words, "of St. Louis," is simply indicative of the place where its business was to be done, and to distinguish it from other companies that might be engaged in the same business in other localities. The objects for which the company was incorporated, as stated in the certificate, are within the general terms of the business indicated by the name of the company in the subscription paper, the manufacture of cotton-seed oil, and the business that was to be carried on, in the contemplation of all the parties, is the business contemplated by the certificate. The words used therein, which, it is contended, would authorize the company to engage in another and different business, when read in connection with the whole paragraph, and given only such meaning as they are entitled to from their association in it, are evidently intended to cover only such business as might be incidental and necessary to the main business, and the doing of which might necessarily grow out of it. Besides, the company never did engage in any other business, the calls, if any were made, were solely for the purpose of carrying on the business contemplated by the subscribers, and the defendant ought not to be permitted to say, in defence to an action for calls on his subscription, made to carry on the business which he contemplated, by the company incorporated for that purpose, and

engaged in that business only, that it might, under the act of incorporation, have carried on other business, and if he could not plead such a defence in an action by the company on the call, it is no defence in this action.

The defendant further pleads, and urges as a defence to this action, that he was induced to sign the subscription paper by the false and fraudulent representations of Tilden that certain of the defendant's neighbors and friends had agreed to take stock in the company. Even if it be conceded that Tilden's false representations could avoid the contract made by the defendant, yet they cannot avail the defendant in this case, for three reasons: (1) Before he subscribed, he could have ascertained whether the representations were true or false; (2) the terms of the subscription contemplated an organization before the first day of September, 1879, and he had time enough to ascertain whether those representations were true or false before the organization, and to have notified his associates of his withdrawal from the enterprise, before they acted on the faith of his subscription, in case he found them to be false; (3) the representations were not of the existence of a fact essential to the success of the enterprise, however desirable it may have been to the defendant that his neighbors and friends should have been his associates, and however beneficial he may have believed their becoming interested therein would have been to the enterprise. If he intended that their becoming so should be a condition of his subscription, he should have put it into the contract—for ordinarily it cannot be deemed essential to the success of an enterprise to be carried on by a corporation that its stock shall be owned by any particular persons. As soon as created, it becomes transferable personal property; the owners of stock to-day cannot tell who their associate owners will be to-morrow. It is put upon the market and bought and sold by whomsoever will. The essential fact is behind the subscription

to the stock and its ownership, it matters not who the subscribers are, or whence they come. It is the capital they bring that is necessary to carry on the enterprise ; that is the essential fact, and this brings us to the main question in the case.

For while the defendant cannot question the corporate existence of the company, and has not made it appear that it was other than the company to which he subscribed stock, and cannot successfully plead his reliance upon false inducements held out to him to subscribe, against which he might have protected himself by ordinary prudence, yet there is one thing which he had a right to rely upon, and that was, that his subscription should not be put to the hazard of the venture until the capital stock deemed necessary to the success of the enterprise had been taken or subscribed for. The success of the enterprise, and the profits to be derived therefrom, may depend entirely upon the full amount of the capital being taken up, and "there is a wide difference between the existence of the company as a corporate body and the liability of parties for their subscription to its capital stock. *Hager v. Cleveland,* 36 Md. 476. The right of the company to enter upon the business for which it was incorporated, and to call in subscriptions to its capital stock, was upon condition that its capital stock, as stated in the recorded certificate, had all been taken or subscribed for.

The rule, as stated by Thompson in his work on Liabilities of Stockholders (sec. 120), is supported by an unbroken chain of authorities : "Where, on the organization of a corporation the number of shares of the capital stock and the sum to be paid for each share are agreed upon and inserted in the agreement of subscription, the subscribers are not bound to pay their subscriptions until the requisite number of shares is filled up by subscriptions. The same rule applies when the company is incorporated under a general law, which

requires that the amount of its stock, and the number and denomination of its shares shall be stated in a recorded certificate.    Here no valid assessments can be made on subscribers until the whole of the capital stock is taken, unless there be a provision to that effect, either in the recorded certificate or in the general law under which the company is incorporated, and in such case the subscription may be considered to that extent conditional.    *    *    *    In either case, however, the subscribers may waive the condition, and with their assent the company may not only organize, but do all other things necessary to the prosecution of the particular business for which it was incorporated.    This waiver may be either express or implied from the acts and declarations of the subscribers.    If, knowing that the whole capital stock has not been taken, they attend the meetings of the company, coöperate in the votes for the expenditure of money for the purchase of property, for the making of contracts, and for other acts which could only properly be done upon the assumption that the subscriber intended to proceed with the stock partly paid up, they will be estopped from setting up such a defence." *Hager v. Cleveland*, 36 Md. 476 ; *Hughs v. Antietam Co.*, 34 Md. 316 ; *Sedalia, Warsaw & Springfield Railroad Co. v. Abell*, 17 Mo. App. 645 ; *Cabot v. Chapin,* 6 Cush. 50 ; *Railroad v. Gould*, 2 Gray, 277 ; *Bridge Co. v. Cummings*, 3 Kans. 55 ; 1 Moraw. Priv. Corp., sec. 276, and cases cited ; *Railroad v. Preston*, 35 Iowa, 115 ; *Jewett v. Railroad*, 34 Ohio St. 601 ; *Livesey v. Hotel Co.*, 5 Neb. 50.

In this case, the indisputable evidence is, that the capital stock of the company was to be fifty thousand dollars, but it was not inserted in the agreement of subscription, and for that reason this case is taken out of the first class of cases mentioned in the rule, but it comes within the terms of the second class to

which the same rule applies. It is a company organized under a general law which required that the amount of its capital stock shall be stated, as well as the number and denomination of its shares. In the recorded certificate, they were so stated—the capital stock to be fifty thousand dollars, to be divided into five hundred shares of one hundred dollars each. In such case no valid assessment on the stock subscribed could be made before the whole of the capital stock was subscribed for or taken, unless there was a provision to that effect, in either the contract or subscription, the recorded certificate, or in the general law under which the company was incorporated, or the subscribers either expressly or impliedly waived that condition. It must be conceded that there is no such provision, either in the contract or subscription, or in the recorded certificate ; no such provision has or can be pointed out in the general law under which the company was organized— if organization it can be called—nor has the defendant expressly, nor by an act, word, or deed of his impliedly, waived the condition, or assented to the organization of the company, or its entering upon the business for which it was incorporated, with a less amount of capital than was agreed upon, and stated in the recorded certificate. He did not participate in the organization, and had no notice of it ; he never received a certificate of stock, or notice of an assessment upon the stock he had subscribed ; he never participated, directly or indirectly, in any of its meetings or proceedings, or coöperated in any of its acts, and is not estopped from denying that any legal assessment has been made upon the stock subscribed for by him.

If an action had been commenced by the corporation to recover the amount of defendant's subscription called for and unpaid, the defendant would have had a right to show that he had never become liable to any call or assessment on his subscription, for the reason that no

such call or assessment had or could be legally made, and in this action, he is in no worse position. If the corporation, as organized, could not have sued for and recovered the amount of defendant's subscription, for the reason that the capital stock to which he subscribed had never been taken, and in fact never had an existence, then the assignee of the corporation cannot recover such subscription, for he stands in the shoes of the company, with all the rights the company had against this defendant, but none other. *Roan v. Winn*, 93 Mo. 503; *Heinrichs v. Woods*, 7 Mo. App. 236. The court declared the law to be, under the pleadings and evidence, that the plaintiff was entitled to recover judgment for the full amount sued for. The evidence having failed to show that the capital stock of the company, as agreed upon between the parties, and stated in the recorded certificate, had ever been subscribed or taken, we think the court erred in its declaration, and in the judgment rendered under such declaration for the plaintiff.

For which error the judgment is reversed and cause remanded. All concur, except Ray, J., absent.