MILTON SCHWABER *v.* EDWARD E. HARGEST, JR., ET AL.

[No. 63, October Term, 1944.]

*Decided December 20, 1944.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, MELVIN. BAILEY, CAPPER, and HENDERSON, JJ.

*Louis Silberstein* and *Wm. Taft Feldman,* with whom was *Harry Silver* on the brief, for the appellant.

*Bernard M. Goldstein,* with whom were *George Ross Veasey* and *Simon E. Sobeloff* on the brief, for the appellees.

CAPPER, J., delivered the opinion of the Court.

Appellant brings this appeal from an order of the Circuit Court of Baltimore City rejecting his claim of $3,-500 filed with the appellees, receivers of M. Waller Corporation.

Appellant was engaged in the gasoline and filling station business and for a considerable period of time had dealings of various kind with said corporation. He was

on friendly terms with Max Waller, President, and Harry Waller, Secretary-Treasurer, of the corporation. Appellant was also well acquainted with William A. Sherman, now deceased, who operated a business under the name of Major Oil Company. Appellant assisted in developing and establishing some oil stations for the Major Oil Company.

The M. Waller Corporation in the year 1939 purchased a piece of property on South Clinton Street in Baltimore in order to obtain a waterfront terminal. The Wallers had frequent conversations with the appellant about that time relative to the sizes of the tanks, their capacity, etc., that they were going to use in the new station at the waterfront terminal. They suggested to appellant that they would like, if possible, to pick up about a quarter of a million gallons per month new business, which would help their new terminal, at which they proposed to purchase their produce in barges.

Harry Waller requested appellant to endeavor to get the business of the Major Oil Company for them and stated that if he could get it, they would pay him for it a brokerage fee or commission of one-eighth of one cent per gallon for all the business he would get. The business consisted of purchases by the Major Oil Company from the M. Waller Corporation of gasoline, oils, kerosene, etc. It is undisputed in this case that appellant secured the business of the Major Oil Company for the M. Waller Corporation; that during the years 1940, 1941 and 1942 this business amounted to 3,453,399 gallons of gasoline, oil, and kerosene, upon which the commission, as above stated of one-eighth of one cent a gallon, would amount to $4,316.75.

During a considerable portion of this period, the appellant was also purchasing gasoline and oil products for his own use from M. Waller Corporation, and he was allowed a discount of one-half cent per gallon. At the time of the receivership, he owed the M. Waller Corporation a balance for said purchases amounting to $1,884.50, the difference in the accounts being the sum claimed by appellant of $2,432.25.

M. Waller Corporation was placed in the hands of appellees, receivers, by the Circuit Court of Baltimore City on the 24th day of September, 1942. On the 27th of November, 1942, appellant filed in the said receivership case his claim, which he admitted was an estimated one as he had not the exact figures, amounting to the sum of $3,500, as follows:

"Claim of Milton Schwaber for commission of one-eighth of one cent per gallon for each gallon of gasoline, kerosene, or fuel oil sold by the M. Waller Corporation to William H. Sherman, trading as the Major Oil Company, as per agreement with M. Waller Corporation, $3,500.00."

To the claim was attached the usual affidavit. On March 24, 1944, the receivers filed an exception in the said Court to said claim.

At the trial of these exceptions, the appellant testified fully concerning all of the aforesaid transactions and further stated that Max Waller, brother of Harry Waller, knew about his agreement and that Max Waller raised a question concerning the credit standing of William A. Sherman and the Major Oil Company, as a result of which, the appellant personally and verbally agreed to guarantee the account of the Major Oil Company with the M. Waller Corporation to the extent of $5,000. The evidence discloses that the guarantee proved later on to be unnecessary inasmuch as the Major Oil Company paid all of the bills for the product purchased by it from M. Waller Corporation.

Appellant was paid nothing during this entire period on account of his commissions and when asked whether he had ever presented a bill for same, stated that he did not recall but it was more than likely that he may have done so. The testimony on the part of appellees shows that the Waller Corporation never received such a bill. Appellant further stated that the reason he had not pressed for prompt payment of these commissions was that the two Waller Brothers were having difficulties between themselves and he was exerting his efforts to

keep them together so that their business would be successful. He explained that the one-half cent per gallon commission allowed him on his purchases from the M. Waller Corporation was nothing unusual as the same allowance was made to practically all of the customers of the corporation.

There is nothing in the testimony which leads this Court to believe that this one-half cent discount had anything to do with the agreement under which appellant was to receive one-eighth of one cent per gallon on the purchases by the Major Oil Company.

Harry Waller testified as a witness for appellant, fully confirming the deal, by stating that appellant was to receive one-eighth of a cent brokerage "on all product bought by him in the M. Waller Corporation, that the Major Oil Company put into our plant. This has nothing to do with any other business that he may have gotten for us. Mr. Schwaber was solely instrumental in getting the Major Oil Company account for the M. Waller Corporation. My brother, Max Waller, knew all about the arrangement. He knew all about it."

The witness further testified that on numerous occasions he had discussed with his brother, Max Waller, this one-eighth of one cent brokerage, both before and after the work was begun. He also stated that the Major Oil Company was the largest consumer of the product on the books of their company.

The evidence on the part of appellees further disclosed that appellant never had made any demand upon the officers of the M. Waller Corporation for payment until the filing of his claim in the receivership proceedings. After testimony, as above indicated, had been offered, the Court suspended the hearing of the case until Max Waller could appear and testify in person.

When the hearing was again resumed Simon Sobeloff, one of the attorneys for the receivers, stated in open Court that since the previous hearing, he had talked with Max Waller, who was present in Court, and ascertained that while Max Waller did not make the commission

agreement with appellant, he, nevertheless, knew that there was some such an agreement and believed the claim to be correct. He also stated to the Court that he had a letter signed by George T. Burgevin, who was the general manager of M. Waller Corporation, appointed by the receivers, addressed to Harry Waller, to the effect that while the claim was not approved officially, there was some basis for claimant's position in the matter and that he, that is, Sobeloff, had agreed with one of appellant's counsel, Louis Silberstein, that the exceptions to the claim would be withdrawn and the claim allowed to stand in the sum of $3,500, subject to a deduction or off-set of $1,884.50, the amount due and owing M. Waller Corporation by appellant.

The learned Court below refused to adopt the suggestion of receivers' counsel and proceeded with the case and heard the testimony of Max J. Waller. The Court was insistent throughout on making inquiry as to whether the books or any of the records of the corporation contained any entries concerning appellant's claim. It was freely admitted that there was no written entry in them concerning the claim.

Max Waller testified quite fully about the claim of appellant and said that he knew of an agreement on the part of M. Waller Corporation to pay appellant commissions, such as is alleged to be due and owing to appellant, and that the agreement was made by the appellant and his brother, Harry Waller, about the time when appellant brought the Major Oil Company account to their company. He said his brother had discussed the agreement with him, although he did not have any definite knowledge about the exact amount of commission to be paid at the time he testified. The witness stated that from time to time appellant discussed his claim with him but did not push it with Harry, although he knew appellant endeavored on one or more occasions to get the figures showing the amount of business which Major Oil Company had done with M. Waller Corporation. He further stated that he did know that normally in a trans-

action of this kind, the commission is about one-eighth of a cent in the wholesale trade.

It was admitted by the Waller Brothers that appellant had never received any compensation whatsoever for his services in securing this large amount of business.

The learned Court below rejected the claim without a written opinion by the simple statement that he did not believe there was a business transaction of the nature indicated but that he thought what happened was that appellant had a conversation with one or the other of the two Wallers, which never went on the books and which never was pressed by appellant until after the receivership.

In rejecting this claim, the lower Court erred. It was not necessary in order to establish such a claim that it be in writing or that it should be entered upon the books of the M. Waller Corporation. *Hock & Co. v. Strohm,* 166 Md. 253, 170 A. 738. These books are not evidence against third parties, although they may be evidence against the corporation. *Hager v. Cleveland,* 36 Md. 476; *State v. Brown,* 64 Md. 199, 1 A. 54, 6 A. 172; *Brune, Maryland Corporation Law,* Sec. 180, p. 244.

Appellee contended further that because of the fact that appellant had on other occasions assisted the Waller Corporation in handling some of its business affairs without compensation, it should be presumed that he also obtained the account involved herein without any intention to charge for his services. We see no reason why the fact that he had been friendly with the M. Waller Corporation and served it on other occasions without pay should disentitle him to recover upon his claim in this case, which we think is fully established by the evidence. The M. Waller Corporation received the benefit of this large amount of business through the sole efforts of appellant. It is proved by appellant and by both of the principal officers of the corporation that an agreement was made with appellant before the business was secured, to pay him one-eighth of one cent as commissions. The business was secured by appellant's individual effort and

the books of the Waller Corporation show the amount of the business which it so received. There is no persuasive testimony to the contrary. The fact that counsel for receivers were convinced of the justice of appellant's claim is a strong argument in its favor. This Court cannot, in view of this proof and the facts in the record, do other than to allow appellant's claim.

It is, of course, the privilege and duty of this Court to give full effect to the Chancellor's decision upon a question of fact, based upon testimony presented in open Court unless convinced that the findings of fact are erroneous. In such case, it is just as much the duty of this Court to reverse the decision of the Chancellor. *Hayes v. Covington,* 183 Md. 506, 39 A. 2d 475.

For the reasons stated, the order appealed from must be reversed and appellant's claim allowed in the amount of $2,432.25.

*Order reversed and appellant's claim of $2,432.25 allowed, with costs to appellant.*