SHELBY COUNTY RAILWAY COMPANY,
Appellant, v. CROW, Respondent.

St. Louis Court of Appeals, May 11, 1909.

1. **CORPORATIONS:** Stockholders: Preliminary Subscription: Consideration. Where several persons sign a preliminary subscription for stock in a corporation to be thereafter organized, it is a sufficient consideration for the promise of each to take and pay for stock that the other subscribers have made a like promise. The contract being made for the benefit of a third party, the corporation to be organized, the agreement inures to the benefit of such corporation; this is the rule at common law.

2. ———: ———: ———: Railroad Companies. One who signed a preliminary subscription for stock in a railroad corporation to be thereafter organized under section 1034, Revised Statutes 1899, who did not subscribe the articles of association of the proposed company nor the stock books of the company after they were opened, was not a stockholder so that the corporation afterwards organized could not recover from him the amount of his subscription. [Following Sedalia, etc., Railroad v. Wilkerson, 82 Mo. 335, on the ground that the Court of Appeals is bound by the Constitution to follow the latest ruling of the Supreme Court.]

Appeal from Shelby Circuit Court.—*Hon. Ben Eli Guthrie,* Special Judge.

AFFIRMED.

*E. M. O'Bryen and V. L. Drain* for appellant.

A contract entered into for the purpose of forming a corporation, by the terms of which the subscribers agree to take a stipulated amount of stock in said concern, is valid. It inures to the corporate body when organized and is enforcible against the signers. 26 Am. and Eng. Ency. of Law (2 Ed.), pp. 902-903, and authorities there cited. 10 Cyclopedia of Law and Procedure, 386, 388; Hotel Co. v. Smith, 13 Mo. App. 7; Haskell v. Sells, 14 Mo. App. 91; Swain v. Hill, 30 Mo. App. 444; Ollesheimer v. Thompson, 44 Mo. App. 181; Hotel Co. v. Wright, 73 Mo. App. 240; Haskell v. Worthington, 94 Mo. 560, S. W. 481; Hequembourg v. Edwards, 155 Mo. 521, 56 S. W. 490; Bank v. Rockefeller, 195 Mo. 15, 93 S. W. 761.

*Humphrey & Gose* for respondent.

NORTONI, J.—This is a suit in which it is sought to enforce the liability of a stockholder in an incorporated railroad company against the defendant, who had signed only a preliminary subscription paper. That is, it is sought to enforce the liability of a stockholder against the defendant who had not signed the articles of association nor otherwise subscribed for stock in the company, in accordance with the statute. The circuit court sustained a demurrer to the petition giving judgment to the effect that upon the facts stated, no liability arose against the defendant from signing the preliminary subscription paper. Plaintiff prosecutes the appeal.

The material facts in the petition are as follows: After averring that the plaintiff is a railroad corporation, duly incorporated and existing under the laws of Missouri, it is alleged that the defendant and a number of other persons were desirous of associating themselves together for the purpose of constructing a railroad from the city of Shelbina to the city of Shelbyville, in Shelby

county, Missouri. In consideration thereof and in consideration of the mutual promises each to the other, and the benefit to be derived from being members of the proposed corporation, the defendant and numerous other persons, made and subscribed to a certain agreement as follows:

"We hereby subscribe the amount set opposite our names as the amount of stock to be taken in a corporation, to be hereafter organized by the subscribers hereof, for the purpose of constructing and operating a steam or electric railroad between the cities of Shelbyville and Shelbina, Shelby county, Missouri. This agreement not to be binding unless said corporation is organized within one year from June 1, 1906."

It is averred defendant subscribed to said agreement and at the time of subscribing set opposite his name thereto subscribed, the sum of two thousand dollars, and thereby agreed and promised to take stock in said corporation when formed, to that amount and to pay for the same the sum of two thousand dollars. It is then averred that the full amount of the stock of said railroad company required by law was duly subscribed in good faith; that all necessary steps were taken to the due and proper organization and incorporation of the plaintiff company, and at a meeting of the stockholders thereof, held at Shelbyville, on September 10, 1906, the amount of the capital stock of said corporation was fixed at the sum of $110,000, and divided into two hundred and twenty shares of five hundred dollars each. It is further averred that the plaintiff company accepted the subscription made by said defendant and other persons and that on the faith thereof, it expended large sums of money in and about procuring its incorporation and in the construction of said railroad which it undertook and completed; and also entered into contracts and incurred liabilities to a large amount, etc. It is further averred that the directors of the plaintiff company levied four several calls upon the stock subscription mentioned, and

duly notified the defendant thereof, each and all of which he declined to pay, although such calls were then long past due; that plaintiff has, by its officers, tendered the defendant a certificate for such stock in regular form and has demanded the amount due thereon and therefor but the defendant has refused to accept or pay for the same and that the plaintiff now here tenders the certificate for four shares of its stock, the same being duly signed and issued under the corporate seal, etc. Wherefore judgment is prayed against the defendant thereon.

It is argued on the part of plaintiff that the subscription executed by the defendant was given in consideration of mutual promises of numerous other persons, associates, who also subscribed to the identical preliminary paper declared upon in this case, and that such mutual promises constituted a valid and subsisting consideration for his contract of subscription which inured to the benefit of the corporation subsequently formed. And therefore the plaintiff, afterwards incorporated, having accepted the defendant's subscription and tendered its stock certificate to him, is entitled to recover in this case on the theory that the original subscription inured to the benefit of the plaintiff corporation, subsequently formed. Now there can be no doubt in those cases where individuals associate themselves and mutually subscribe to an undertaking, each subscribing and joining therein upon the inducement offered in the mutual subscription of the others, that such mutual promises constitute a valid and sufficient consideration to support the contract therein contained. That is to say, the rule is well established that in bilateral contracts, the promise of each of the parties is a sufficient consideration for the promise of the other. Upon the principles of the common law, such contracts are enforced accordingly. [Moss v. Green, 41 Mo. 389; Steele v. Johnson, 96 Mo. App. 147; 6 Amer. and Eng. Ency. Law, (2 Ed.), 727.] And this doctrine obtains, of course, with like force and effect in respect of the mutual prom-

ise contained in preliminary subscriptions to corporation stock, as will appear by reference to 26 Amer. and Eng. Ency. Law (2 Ed.), 910; Marysville, etc., Light Co. v. Johnson, 93 Cal. 538; Wood Harvester Co. v. Robbins, 56 Minn. 48. The doctrine possesses special force when one party, relying thereon, has acted upon the promise, or expended money, time or labor thereon. [7 Amer. and Eng. Ency. Law (2 Ed.), 279; School Dist. v. Scheidley, 138 Mo. 672.] It is true, as well, that a promise made to one person by another upon a sufficient consideration moving from one to the other, for the purpose of creating an obligation in favor of a third person, will be sustained by the law, and may be enforced by the third person in whose favor the promise was made. [Cress v. Blodgett, 64 Mo. 449.] It would seem, therefore, on the familiar principles of the common law, that defendant, having signed the preliminary paper in this case, upon the sufficient consideration of his promise for the mutual promise of the several other subscribers thereon, it ought in justice inure to the benefit of the corporation subsequently formed, as recited in the agreement to have been contemplated by the parties./That the corporation was not yet organized is certainly no valid reason why the promise of the defendant should not attain the dignity of a contract between plaintiff incorporated company and the defendant upon the plaintiff coming into being and accepting the proposition tendered by the defendant, as it did in this case. Indeed, this court has heretofore held that a subscription in the nature here involved, is supported by the consideration of mutual promises between several subscribers, and therefore valid and enforceable by the corporate company subsequently formed, who accepts the same on the theory that it inures to the benefit of the corporation. That is, that it is a contract made between several parties in favor of a third party contemplated at the time, which is the corporation, to be subsequently organized within a reasonable time thereafter,

137 App.—30

[Lindell Hotel Co. v. Smith, 13 Mo. App. 7, 13.] Indeed, such is the doctrine of the overwhelming weight of authority in the country. And the true view, on principle, as we ascertain it from a study of the authorities, is, as said by Judge THOMPSON in his work on Corporations: "First, that the co-adventurers who sign such a contract obligate themselves to each other and that the promise of each is a consideration for the promise of the others. Second, that the subscription is in the nature of a standing and continuing proposal to the corporation which is contemplated by the parties, and that when the corporation is called into existence and accepts the proposal, the minds of the contracting parties meet and the contract is obligatory. It is mere casuistry to say that the contract can never become obligatory because there are not, at the time it is made, two contracting parties." [1 Thompson, Corp. sec. 1165. See also Eastern Plank Road Co. v. Vaughn, 20 Barb. (N. Y.) 155, 160; 1 Cook on Corp. (6 Ed.), secs. 71 to 75 inc.; Peninsular Ry. Co. v. Duncan, 28 Mich. 130; 26 Amer. and Eng. Ency. Law (2 Ed.), 902, 903 and cases cited; 10 Cyc. 383 to 389.]

Mr. Cook, in his valuable work on Corporations, adopts the rule deduced from the cases by Professor Collins of the Cornell Law School on this question, as follows: "Such an agreement, not made as a step authorized by statute in the process of forming the corporation, is a mere offer to the corporation not yet in existence, and is revocable by any subscriber until the birth of the corporation, which operates as an acceptance of the offer, and thereafter the subscription, if not previously revoked, is irrevocable and may be enforced by the corporation." [1 Cook on Corp. (6 Ed.), sec. 75; 26 Amer. and Eng. Ency. Law (2 Ed.), 902, 903; 10 Cyc. 380, 385 and numerous cases cited in the footnotes to the several treatises above referred to.]

It appears that our Supreme Court, in Haskell v. Worthington, 92 Mo. 560, proceeded on the same theory

by entertaining and affirming the liability of Worthington as stockholder in that case although the judgment was reversed and the cause remanded on another question involved. In that case, Worthington, with numerous other persons, had signed a preliminary subscription paper agreeing to take stock in a business corporation to be thereafter formed, as did the present defendant in the plaintiff railroad company. The corporation was thereafter formed and became insolvent. An assignment having been made to Haskell, he instituted suit against Worthington on the preliminary subscription paper and the Supreme Court treated the question as though his liability thereon existed as a matter of course. And this, too, notwithstanding the irregularity of the preliminary paper. [See Haskell v. Worthington, 94 Mo. 560.]

It appears, too, that this court, in Haskell v. Sells, 14 Mo. App. 91, declared the doctrine that an agreement signed by several parties to take shares in a corporation to be thereafter formed, was a contract upon a valuable consideration which inured to the benefit of the corporation when organized in pursuance of the subscription and was enforceable at law by the corporation or its assignee. That, too, was a business corporation. In truth, it was the same concern involved in Haskell v. Worthington, supra, and the suit was by Haskell, assignee of the corporation, against Sells, who had signed the preliminary subscription paper not authorized by statute. The doctrine of that case is that the mutual promises of the several parties who executed the unauthorized subscription paper, constituted a sufficient consideration to infuse validity into the contract; that the contract thus made was for the benefit of a third party; that is, the corporation to be subsequently formed; and therefore, the contract for subscription inured to the benefit of the corporation and became completed by the incorporation of the company which operated an accept-

ance of the proposition to take stock mentioned in the preliminary paper.

In Newland Hotel Co. v. Wright, 73 Mo. App. 240, 243, the Kansas City Court of Appeals gave expression to the same doctrine although the judgment of the court in that case was based upon the grounds of estoppel, the stockholder having participated in a meeting of the company.

Now all of the authorities which we have examined pertaining to the contract touching the relation of stockholder and corporation, proceed upon the theory that such a contract is trilateral in its nature. Indeed, the doctrine obtains generally to the effect that a subscription to the stock of a corporation is a trilateral contract; that is, it is an undertaking not only between the corporation and the individual stockholder, but it is an undertaking between the corporation, the individual subscriber and all other subscribers to the stock as well. [26 Amer. and Eng. Ency. Law (2 Ed.), 902; Graff v. Pittsburgh, etc., Ry. Co., 31 Pa. St. 489; Braddock, etc., Ry. Co. v. Bily, 11 Pa. (Super. Ct.) 144; Phila., etc., Ry. Co. v. Conway, 177 Pa. St. 364; Acetylene Light, etc., Co., v. Beck, 6 Pa. (Super. Ct.) 584.] On this theory, that the several other subscribers as well as the individual subscriber and the corporation are parties to the contract, the law is well settled that a subscriber for stock in a corporation cannot obtain a cancellation of his subscription, except by the unanimous consent of the other subscribers. Even a majority of the stockholders cannot withdraw and refuse to proceed. By the unanimous consent of all the subscribers only may the subscription of an individual subscriber be cancelled. [1 Cook on Corp. (6 Ed.), sec. 169; Ollesheimer v. Thompson Mfg. Co., 44 Mo. App. 172.] Therefore the several other stockholders or subscribers being parties to the contract of subscription as well as the individual subscriber and the corporation, it seems to be obnoxious to the most elementary principles of contract law and of

justice as well, to permit one who has, by subscribing the preliminary paper, induced the promise and subscriptions of his associates, to escape from the responsibilities incurred by bringing into existence the corporation subsequently formed.   On this question, Judge THOMPSON reasons that it is indeed a fraud upon all of the other subscribers, even on an unauthorized paper, to permit one to withdraw from it.   And in commenting upon the doctrine that such preliminary subscriber may escape says that it opens the door to unlimited frauds. "Wealthy and influential men may head the subscription list with large amounts, thus influencing others to subscribe, and then, the very moment before the articles are filed, cancel or reduce their subscriptions, unknown to the others—thus leaving the victims of their fraud bound while they are free.   That the law does not allow this to be done, we shall hereafter see.   We then take the true view to be that the engagement created by a subscription to the stock of a projected corporation is binding in the absence of fraud inducing it, provided the corporation is formed according to the scheme within a reasonable time; and that the subscriber cannot, in the interim, any more than after the corporation is formed, retreat from it without unanimous consent."   It appears in this case that the defendant and numerous other persons, residents of Shelby county, desired for their own convenience and for the betterment of the community at large, to construct this railroad connecting the county seat with the only railroad passing through the county.   To this end, a large number of substantial citizens became subscribers to the preliminary paper.   There can be no doubt that others subscribed on the inducement offered by the subscription of the defendant.   So much is conceded by the demurrer.   That these other subscribers have rights which should be protected under circumstances of the character here disclosed, ought to be beyond question.   It would seem, therefore, that the doctrine which obtains at common law with respect to valid

contracts made between two or more, for the benefit of a third person, ought, in the interests of natural justice, find appropriate application to the facts in this case and be enforced accordingly.

However all of this may be, we are precluded, as was the very learned trial judge, by a decision of our Supreme Court squarely in point. The Constitution of the State, amendment adopted November, 1884, provides that the courts of appeals shall be controlled by the last previous ruling of the Supreme Court on any given question of law or equity. In the case of Sedalia, etc., Ry. Co. v. Wilkerson, 83 Mo. 235, our Supreme Court had before it the identical question involved here, and gave judgment to the effect that although the subscription paper therein involved had been signed by the defendant and numerous others agreeing to take stock in plaintiff railroad company, to be thereafter incorporated, no enforceable obligation was thereby created for the reason the defendant in that case had not brought himself strictly within the statute authorizing the organization and incorporation of railroad companies by having subscribed to the articles of association of the proposed company or become a stockholder thereafter in the stock-book of the company authorized by statute to be opened after its organization. It seems the judgment in that case took no account whatever of the fact of mutual subscriptions by the numerous other persons who had subscribed to the preliminary paper along with the defendant. The court saw fit to adopt the view and follow the reasoning of two New York cases, Troy, etc., Ry. Co. v. Tibbetts, 8 Barb. (N. Y.) 297, and Poughkeepsie, etc., Plank Road Co. v. Griffin, 24 N. Y. 150, and affirm the doctrine that unless the subscriber followed his preliminary subscription by further actually subscribing to the articles of association, or to the stock-book of the company thereafter opened, in accordance with the statute, no contract of subscription was made, and therefore none could be enforced against him nor

against Wilkerson, his executor, the original subscriber having died before the incorporation of the company. While that case seems to overlook and entirely ignore the familiar principle of the common law, that mutual promises constitute a valid and sufficient consideration which may be enforced by a third person when made in his favor, it is nevertheless the law of this State, so far as this court is concerned. The statute under which the attempted subscription for stock was made in the Wilkerson case is identical in all material respects with the statute touching the matter of the organization and incorporation of railroad companies in force at the time the preliminary paper was signed. See sec. 1034, R. S. 1899. It is unnecessary to recite its provisions here. The gist of that case is succinctly stated by Mr. Commissioner Martin as follows: "The fact that informal papers and circular letters are commonly signed and published as a part of the enterprise and zeal which gives birth to public corporations, can make no difference as long as the statute fails to recognize them among the necessary and prescribed legal steps to be taken by the incorporators to create the body corporate." [The Sedalia, etc., Ry. Co. v. Wilkerson, 83 Mo. 235, 242.]

Learned counsel have urged us to certify this case to the Supreme Court for final determination, as in conflict with Newland Hotel Company v. Wright, 73 Mo. App. 240. While that case certainly proceeds upon a theory contrary to the judgment herein given, the judgment of the Kansas City Court of Appeals was placed upon the grounds of estoppel, and it in no sense conflicts with the judgment to be given here. We are therefore not permitted, under the Constitution, to certify the cause. The Wilkerson case, supra, is precisely in point and controlling authority.

In obedience to the mandate of the Constitution the judgment is affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.

REYNOLDS, P. J.—I concur in the result, solely because bound by the constitutional provision to follow the last controlling decision of the Supreme Court.