# DE GIVERVILLE LAND COMPANY, Respondent, v. JOHN W. THOMPSON, Appellant.

### St. Louis Court of Appeals, May 4, 1915.

1. CORPORATIONS: Manufacturing and Business Companies: Subscription to Stock: What Constitutes. It is not essential, in order to constitute one a stockholder of a corporation to be organized under the Manufacturing and Business Companies' Act (Art. 7, Chap. 33, R. S. 1909), that he actually subscribe and acknowledge the articles of association, or be mentioned therein as one of the corporators, provided some one authorized to do so represents him in forming the corporation; distinguishing Sedalia, etc., Railway Cmpany v. Wilkerson, 83 Mo. 235.

2. ————: ————: ————: ————. In view of the fact that the employment of the word "associates" in Sec. 3341, R. S. 1909, relative to the incorporation of manufacturing and business companies, seems to exclude the idea that it is essential that all of the stockholders be required to subscribe to the articles of association, a contract of subscription for shares of stock of such a company may be entered into in various ways. Whenever an intent to become a subscriber is manifested, the courts incline, without particular reference to formality, to hold that the contract of subscription subsists. It is, as in the case of other contracts, very much a question of intent. Formal rules are for the most part disregarded, and in general a contract of subscription may be made in any way in which other contracts may be made. Any agreement by which a person shows an intention to become a stockholder is sufficient to bind both him and the corporation.

3. PRINCIPAL AND AGENT: Acts Performable by Agent. Whatever one may, himself, do in the world of commerce, he may do through his lawfully authorized agent.

4. CORPORATIONS: Subscription to Stock: Nature of Contract. A contract between several persons, by which they agreed to subscribe to the stock of a corporation to be thereafter formed and appointed several persons as their agents to form the corporation, inured to the benefit of the corporation, which was subsequently formed, and to the benefit of all the subscribers, and in this sense was a trilateral contract.

5. ————: Manufacturing and Business Companies: Subscription to Stock: Sufficiency of Evidence. Several persons entered into a contract to form a corporation under the Manufactur-

ing and Business Companies' Act (Art. 7, Chap. 33, R. S. 1909), and appointed other persons to act as their agents in the formation of the corporation. Such agents were the only persons who signed the articles of association, which recited that the whole of the stock was held by them. *Held*, that the parties to said contract were estopped from denying that they were stockholders of the corporation so formed at their instance by the agent appointed by them to do so; *held, further*, that the parties to said contract were stockholders of the corporation, and liable as such on their subscriptions, notwithstanding they were not named as corporators in the articles of association and notwithstanding their names were not subscribed thereto.

6. ————: **Function of Stock Certificate.** A certificate of stock in a corporation is merely evidence of the right of the stockholder to enjoy the benefits of and participate in the corporate affairs.

7. ————: **Action on Stock Subscription: Effect of Nondelivery of Stock Certificates.** In an action by a corporation on a stock subscription, it suffices for the corporation to show a contract of subscription, or facts affording an estoppel, on which the relation of the shareholders arises, without showing a delivery or tender of the stock certificate, for such is not due until payment for the stock is made.

8. **PARTIES: Action: Contract for Benefit of Third Party.** Under sections 1729 and 1730, R. S. 1909, a contract made between two persons for the benefit of a third, may be recovered on, either by the person with whom it was made, or by the third person, for whose benefit it was made; Sec. 1730, enlarging the term "trustee of an express trust" so as to include, not only those who are such trustees under the ordinary rules of equity, but also those in whose name contracts are made for the benefit of third persons.

9. **CORPORATIONS: Action on Stock Subscription: Parties: Right to Maintain Action.** Several persons entered into a contract to form a corporation under the Manufacturing Business Companies' Act (Art. 7, Chap. 33, R. S. 1909), and appointed other persons to act as their agents in the formation of the corporation. Such agents were the only persons who signed the articles of association, which recited that the whole of the stock was held by them. Upon defendant's refusal to pay for the number of shares he agreed in said contract to take, another advanced the amount of his subscription, at the instance of the other subscribers, to complete the capital of the corporation. In an action by the corporation against defendant on his stock subscription, *held* that the corporation, as the trustee of an express trust, had the right to maintain the action,

under Section 1730, R. S. 1909, so as to require defendant to compensate the other subscribers, at whose instance and for whose benefit the advancement covering defendant's stock subscription was made.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Marshall & Henderson* for appellant.

*James A. Seddon* for respondent.

NORTONI, J.—This is a suit for the subscription price of shares in the plaintiff corporation. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff is an incorporated company, with a capital amounting to $100,000, and all of the subscribers accepted and paid for the stock, according to their agreement, save defendant, who repudiated his contract. Defendant subscribed the preliminary paper, by which he agreed to take stock in the plaintiff company to the amount of $2500, but, as before said, subsequently refused to make payment therefor.

The company was formed under the statute pertaining to the incorporation of "Manufacturing and Business Companies," with a view of purchasing, subdividing, and selling a tract of land in St. Louis. It appears the Rock Island Railroad Company owned and used the parcel of land as switching yards and that such land lay on the north side of Forest Park and adjacent to a substantial residence district of the city. It is bounded in part by Union avenue on the east and DeGiverville avenue on the north and DeBaliviere avenue on the west. The constant emission of dense smoke, noxious gases, and the noises incident to the movement of locomotives and cars in the switch yards, were deemed by the inhabitants of the neighborhood as

a nuisance, and, therefore, it was decided to relieve the situation therefrom.

Messrs. Festus J. Wade and W. F. Carter conceived and formulated the plan of organizing a corporation with a view of purchasing the property from the Rock Island Railroad Company, removing the railroad yards therefrom, subdividing the parcel of land into city lots and selling them under restrictions for residence purposes in order to benefit all concerned —that is, the property owners thereabout. It was contemplated that the corporation should be formed through subscriptions for its stock on the part of the owners whose property would be more or less enhanced in value by the removal of the railroad yards, as well as the recipients of such benefits as might be afforded through the subdivision and resale of the property into city lots subject to restrictions concerning their use. To this end, a preliminary subscription paper was prepared and circulated in the neighborhood among the property owners, and it appears that 128 separate persons signed the same, agreeing to take stock in the proposed corporation equal to the amount set opposite their respective names. Defendant, who owned property fronting 500 feet on DeGiverville avenue, immediately adjacent to the railroad yards, subscribed to the preliminary paper, in which he agreed to become a shareholder in the corporation in the amount of $2500, along with 127 others, who subscribed for different amounts.

The subscription paper signed by defendant and the other property owners designated and appointed as a committee Festus J. Wade, C. H. Huttig, Robert S. Brookings, W. K. Bixby, James A. Seddon and Daniel K. Catlin as the attorneys in fact and agents of all of the subscribers thereto to make the purchase of the land, either in their own names or in the name of their nominee for the benefit of such subscribers, and, moreover, it appointed and authorized such committee to

cause a corporation to be formed, with a capital stock equal to the subscription thereto, to which corporation, when organized, the real estate described therein should be conveyed. All of the subscribers to such preliminary paper agreed to take stock in such corporation according to the amounts set opposite their names.

The committee above named caused the preliminary paper to be circulated in the neighborhood, as above stated, and procured the several subscriptions until $100,000 was subscribed thereto by the 128 persons who affixed their names. Thereupon the committee went about the forming of the corporation in accordance with the directions and the authority conferred upon it to represent all of the subscribers. The articles of agreement, with a view of forming plaintiff corporation, were prepared and executed under sections 3339, 3340, 3341, Revised Statutes 1909, on the 19th day of May, 1910, in that they were duly signed and acknowledged and recorded, whereupon the certificate of incorporation was issued by the Secretary of State on the 21st day of May thereafter; but the articles of agreement were neither subscribed nor acknowledged by all of the individual subscribers to the preliminary paper. The committee above named, having been authorized in advance by the preliminary paper, so signed as above mentioned, caused the corporation to be formed in behalf of the subscribers whom they represented, by James A. Seddon, Daniel K. Catlin, D'A. P. Cooke, W. K. Bixby and C. C. Collins. C. C. Collins was not one of the subscribers to the preliminary paper, but was the attorney for the parties—that is, under the selection of the committee above mentioned, who drafted the articles of agreement, guided the organization and procured the certificate of incorporation for the company.

The names and places of residence of each of the stockholders and the number of shares subscribed by

each, as recited in the articles of agreement, are as follows:

"Name.            Residence.            No Shares.
Jas. A. Seddon,   St. Louis, Mo.       28 shares
Danl. K. Catlin,  St. Louis, Mo.       75 shares
D'A. P. Cooke,    St. Louis, Mo.       10 shares
W. K. Bixby,      St. Louis, Mo.       68 shares
C. C. Collins,    St. Louis, Mo.    9,819 shares"

The articles provided for the first board of directors and are otherwise in the usual form, being subscribed and acknowledged by the persons above named. Among other things, the articles of agreement recite, "The amount of the capital stock of said corporation shall be $100,000, divided into 10,000 shares, of the price and par value of ten dollars each, and the same has been bona fide subscribed and all thereof has been paid up in lawful money of the United States, and is in the custody of the persons hereinafter named as the first board of directors of said company." All of the subscribers on the preliminary paper paid the amount of their subscriptions save defendant—that is, $97,500 of the amount subscribed was duly paid—and the committee, in performing their office to cause a corporation to be formed, procured the advancement by an adjoining property owner of $2500 to supply the amount of defendant's subscription, in order that the full amount of the capital stock should be immediately available to pay for the land, so as to cause the title thereto to be conveyed to the corporation. It was essential, in order to consummate the formation of the corporation and the fact of acquiring title to the land as contemplated in the preliminary paper, to have the $100,000 capital immediately in hand. The full amount of the capital stock being thus paid in, the articles of agreement recited that fact as above set forth—that is, that the stock had been bona fide subscribed and all paid up in lawful money of the United States, which was then in the custody of the persons named as the

first board of directors. Defendant having continued in his refusal to pay the amount of his subscription, this suit was instituted by the corporation as on a subscription contract, to recover the same, and plaintiff prevailed at the trial. .

It is urged the court erred in giving judgment for plaintiff, for that it does not appear defendant subscribed to the articles of agreement contemplated in the statute, under which the company was formed, and it is said that his subscription on the preliminary paper is not sufficient, though accepted by defendant, to create the relation of a shareholder between plaintiff and defendant. This argument seems to pay but slight heed to the fact that defendant and others appointed the committee above named to represent him and others in causing the corporation to be formed and that such committee went forward in good faith and performed the task assigned them. Obviously, defendant is estopped to repudiate the act of his agent thus appointed and, indeed, instructed to perform the precise piece of business accomplished.

But the theory of the argument presented is, that the authority of the committee to cause a corporation to be formed, of course, implies that it shall be formed according to law, and that the relation of shareholder and corporation cannot be created between these parties, save and except defendant actually subscribed and acknowledged the articles of agreement for himself and in his own behalf.

The case of Sedalia, etc., Ry. Co. v. Wilkerson, 83 Mo. 235, is relied upon in support of this argument, but, manifestly, it is not in point, for there is an obvious distinction in the statutes under which the corporation was formed in that instance and here. That case was a suit as on a subscription for shares in a railroad corporation. The subscriber, Smith, signed a preliminary paper, similar in material respects, to that involved here. After his death the suit proceeded

against his administrator, Wilkerson, for the amount
of the subscription. In that case the court pronounced
the judgment on interpreting the statute concerning
the organization of railroad companies. Such statute
required that a subscriber to the capital stock of a
corporation of that character should either sign the
articles of association, if he became such before the
organization of the company, or, if thereafter, then by
subscribing for the stock in the books of the corpora-
tion. Two different sections of the statute then in
force are referred to and quoted. They are substan-
tially the same as section 3048, *et seq.*, Revised Stat-
utes 1909. The statute there under consideration pro-
vided, too, "And thereupon the persons who have so
subscribed such articles of association, and all persons
who shall become stockholders in said company, shall
be a corporation by the name specified in such arti-
cles of association, and shall possess the powers and
privileges granted to corporations, and be subject to
the provisions relating thereto contained in this chap-
ter." In view of these provisions of the statute the
court declared the preliminary paper subscribed by
Smith, whose executor, Wilkerson, was defendant, was
unavailing, for that, in order to create the relation of
shareholder in a railroad company, it was essential
that the subscriber should actually sign the articles
of association, if in advance of, or the stock book, if
after, the formation of the company, and that they
should then become incorporated under the provision
last quoted.

This doctrine, it is said in 10 Cyc. 386, treats pre-
liminary share subscribers to corporations not yet
formed, with the utmost levity and ignores the just
principle that such subscriptions are mutual promises
among the subscribers as toward each other, so that
such mutuality constitutes a sufficient consideration
for a subscription and is none the less so because the

190MA44

promise is made to the corporation not yet *in esse.* Indeed, it is said, too, concerning this (10 Cyc. 386), under which, in note 2 the Wilkerson case is cited, that "This rule proceeds upon the narrow and strict ground that a contract, such as will bind the intending obligors, must be tendered to the other contracting party, to an artificial being not yet *in esse,* and in the precise statutory mode, or not at all."

The doctrine, too, is beset with more or less dangers to business and commercial enterprise, as pointed out by Judge Elliott, in his valuable work on Railroads (2 Ed.), vol. 1, sec. 102, *et seq.* and notes. However, in the case of a suit by a railroad corporation as on a subscription contract, against one who had subscribed a preliminary paper only and had not signed the articles of association, we declared the same rule under the same statute, in adhering to our duty according to the mandate of the Constitution requiring the Courts of Appeals to follow the last controlling decision of the Supreme Court on any question of law or equity. [See Shelby Co. Ry. Co. v. Crow, 137 Mo. App. 461, 119 S. W. 435.]

But it seems to be the consensus of judicial opinion in the State that the rule of the Wilkerson case should not be extended to situations other than those arising under the statutes providing for the incorporation of railroad companies. In order to effectuate the ends of justice, the Springfield Court of Appeals, in Louisiana Purchase Expo. Co. v. Schnurmacher, 151 Mo. App. 601, 132 S. W. 326, considered and discriminated the Wilkerson case so as to sustain the obligation of a subscriber to a preliminary subscription paper, in the view that it made him a stockholder in the corporation subsequently formed, to which the proposition was made. This court, in the same case, subsequently approved the ruling there made, as will appear by reference to Louisiana Purchase Expo. Co. v. Schnurmacher, 160 Mo. App. 611, 140 S. W. 1198.

So, too, in the case of a corporation formed under the statute with relation to manufacturing and business corporations, this court declared the relation of shareholder and sustained the recovery on the part of the corporation for the subscription price, though it did not appear the subscriber had joined in executing the articles of agreement and had done no more than subscribe a preliminary paper by which he appointed the first board of directors to act for him and paid ten dollars on the stock. [See Business Men's Assn. v. Williams, 137 Mo. App. 575, 119 S. W. 439.]

Likewise the Kansas City Court of Appeals sustained a recovery by the corporation on the obligation of a shareholder therein for the purchase price, though it appeared he had not subscribed to the articles of agreement, but had executed a preliminary subscription paper only, it appearing as well that he co-operated with others in appointing nine persons to form the corporation who signed the articles to that end. [See Newland Hotel Co. v. Wright, 73 Mo. App. 240.]

Then, too, the Supreme Court, in Haskell v. Worthington, 94 Mo. 560, 7 S. W. 481, which was decided several years subsequent to the Wilkerson case, considered the rights of the parties arising on an unauthorized preliminary subscription paper to the formation of a corporation under the statutes (sections 1, 2, 3, article 7, Wagner's Mo. Statutes, 1872, relating to manufacturing and business companies), and proceeded in the view that such subscription was in nowise invalid because of the irregularity of the preliminary paper. The Wilkerson case was not referred to in the subsequent case, and if the court had regarded the rule it portrayed as a proper one for extension, or as relevant at all under the statutes pertaining to the organization of business companies, it would have afforded a short method to dispose of the case then in hand. But the court considered Haskell v. Worthington, supra,

extensively and disposed of it on other grounds more involved, so as to imply, at least, the subscription on the preliminary . paper then in judgment was ` well enough.

The statutes under which the corporation involved in Haskell v. Worthington, supra, was formed are sections 1,· 2, 3, article 7, Wagner's Mo. Statutes, 1872. These statutes (see section 2) provide that persons ·desiring to form a business corporation thereunder "shall make, sign, and acknowledge" a certificate in writing to the end of incorporating the company, but the same section provides, too, that the person so acknowledging and signing such certificate "and their associates" and successors shall be a body corporate, etc.

Although it is intimated in Haskell v. Sells, 14 Mo. App. 91, involving the same corporation as that before the Supreme Court in Haskell v. Worthington, that a mere preliminary subscription paper might not suffice as a basis for the relation of shareholder and corporation in the corporation subsequently formed under the statutes of 1879 (which continue substantially the same today—that is, sections 3339, 3340, 3341), it was declared amply sufficient under the Wagner Statutes of 1872 above cited. The judgment in that case proceeds in the view that the subscriber to such preliminary paper agreed for the consideration of the mutual subscription. of his co-subscribers to take stock in the corporation subsequently formed and that this continued as a proposition on the part of each subscriber which was accepted upon the corporation coming into existence, so as to create the relation of shareholder therein and authorized a suit for the subscription price. It appears that Sells, the defendant in that case, had not signed the articles of association and that his name was not mentioned on the list of stockholders therein. Notwithstanding this the court declared and enforced his liability as for the stock subscription on the

preliminary paper, no doubt in the view that the statute (Wagner's Mo. Statutes, 1872, art. 7, sec. 2) authorized persons executing the certificate "and their associates" to be incorporated. However, in concluding the opinion, the court merely remarked, but without deciding, that if the corporation were formed under the statutes then in force, similar to our present statutes, the rule might be otherwise.

It is to be said of this that we see no material distinction in respect of this matter between the statutes under which Haskell v. Sells, supra, and Haskell v. Worthington, supra, were decided and the statutes in force at the present time. It is true section 3339, Revised Statutes 1909, under which plaintiff was incorporated, does not require in express terms, as did the Wagner Statute above cited, that the subscribers "shall make, sign, and acknowledge" the certificate, or the articles of agreement, under the present statute. However, the present statute does say that the articles of agreement shall set out, "Fourth, the names and places of residence of the several shareholders, and the number of shares subscribed by each." These words imply, of course, that the shareholders whose names are mentioned in the articles shall subscribe them as was done in the instant case. Section 3340 requires that the articles shall be signed and acknowledged by all of the parties thereto—that is, those that co-operate in the organization and in procuring the charter of the company. The succeeding section (3341) provides and declares the right to affiliate as corporators in the following words: "The persons so acknowledging such articles of association, *and their associates* and successors, shall, for the period, etc., be a body corporate, etc."

It is difficult to perceive any material distinction in these statutes, in so far as the precise question under consideration is concerned, and the statutes of 1872, under which Haskell v. Sells, supra, and Has-

kell v. Worthington, supra, were decided. Both statutes seem to contemplate that not only those who subscribe and acknowledge the articles, but others—that is, "their associates"—may affiliate as corporators and enjoy in part the benefit of the franchises accumulated through suing out the charter.

Entertaining this view we hold that it was not essential to create the relation of shareholder and corporation here in judgment that defendant should actually subscribe and acknowledge the articles of agreement or that he should be mentioned therein as one of the corporators, provided some one authorized to do so represented him in forming the corporation. All of the cases above cited are authority for the principle thus declared, save that of Wilkerson, and it is to be distinguished because it was decided under a separate and distinct statute which portrays a strict rule as to such matters, in that it omits to mention "associates," while the statutes (sections 3339, 3340, 3341) under which the plaintiff company was organized suggest, when considered together, a more liberal doctrine, to the effect that associates may become corporators though they have not subscribed or acknowledged the articles of agreement. The employment of the word "associates" in the statute (section 3341) seems to exclude the idea that it is essential that all of the sharetakers are required to subscribe the articles in business corporations. This being true, it appears, as said by Mr. Cook, in his valuable work on Corporations (7 Ed.), section 52:

"A contract of subscription for shares of stock in an incorporated company may be entered into in various ways. Whenever an intent to become a subscriber is manifested, the courts incline, without particular reference to formality, to hold that the contract of subscription subsists. It is, as in the case of other contracts, very much a question of intent. Formal rules are for the most part disregarded. And in gen-

eral a contract of subscription may be made in any way in which other contracts may be made. Any agreement by which a person shows an intention to become a stockholder is sufficient to bind both him and the corporation.''

The preliminary subscription paper, omitting the 128 signatures thereon, among them that of defendant, so far as material, is as follows:

''The undersigned, each acting herein for himself and not for the other, hereby subscribe for the number of shares set opposite his or her name, in a corporation to be organized under the laws of the State of Missouri, as hereinafter provided.

''The purpose of such corporation when organized is the purchase and sale of the following described real estate, situated in the city of St. Louis, Missouri:

''A certain strip of land lying immediately south of DeGiverville avenue, fronting 225 feet on the west line of Union avenue, extending west to the east line of DeBaliviere avenue and fronting on the east line of DeBaliviere avenue, and now occupied by the Rock Island Railroad Company.

''And we do hereby appoint as a committee: Festus J. Wade, C. H. Huttig, Robert S. Brookings, W. K. Bixby, Judge James A. Seddon and Daniel K. Catlin, as our attorneys-in-fact and agents, to make such purchase, on such terms as to them seem best, the legal title to which may be taken either in the name of said committee, or their nominee, for the benefit of the subscribers hereto, in the proportion of their respective subscriptions.

''The said committee is hereby authorized by the undersigned to cause a corporation to be formed, with a capital stock equal to the total amount of the subscription hereto, to which corporation, when organized, the above described real estate is to be conveyed. If the total amount of the subscriptions hereto be not sufficient to pay the full amount of the purchase price

of said property, then the said committee (or their nominee) are hereby authorized to borrow any balance that may be necessary, securing same by a deed of trust upon the property to be acquired.

"All subscriptions are payable upon the demand of said committee, or their order, whenever in their judgment the amount subscribed is sufficient to justify the purchase of the property.

"In witness whereof, we have hereunto set our hands this —— day of February, 1910, with the number of shares subscribed by us opposite our respective names."

In conformity with the authority thus conferred, the committee named in the preliminary paper and authorized to do so caused the plaintiff corporation to be formed as above stated and arranged with an adjoining property owner to advance temporarily for the benefit of the venture and all concerned in it, the $2500 which defendant had subscribed but refused to pay. The committee authorized Mr. C. C. Collins, an attorney at law, to prepare the necessary articles and look after the details of forming the corporation, which he did. It appears that some of the parties—that is, of the 128 persons who subscribed for the capital stock—were out of the city at the time and it was convenient for those incorporating the company to treat with their attorney as an incorporator in their stead, therefore 9819 shares of the stock are recited in the articles of agreement as standing in the name of C. C. Collins, a resident of St. Louis, Missouri. Because plaintiff's name is not mentioned in the articles and it appears that his share stands in the name of another, it is said he may not be regarded as a member of the corporation in any sense.

What we have said above, no doubt, sufficiently disposes of this argument, but it may be said, too, that defendant himself participated in the organization of this company. It is true he did not personally sign

and acknowledge the articles. It is true, too, that he is not recited therein as a subscriber to the stock and that he has made no payment thereon, but what one may do in the world of commerce by himself, he may do by his agent lawfully authorized thereabout. Defendant, along with the 127 other subscribers to the preliminary agreement, solemnly appointed Festus J. Wade, C. H. Huttig, Robert S. Brookings, W. K. Bixby, Judge James A. Seddon and Daniel K. Catlin as his attorneys in fact and agents to act for him in and about the entire matter in contemplation. These gentlemen were denominated a committee and clothed with full authority to put forward their efforts in behalf of all the parties subscribing the preliminary agreement, and among them defendant. The paper is signed by defendant and recites, ''The said committee is hereby authorized by the undersigned to cause a corporation to be formed, with a capital stock equal to the total amount of the subscriptions hereto, to which corporation, when organized, the above described real estate is to be conveyed.'' The committee in good faith went forward and organized a corporation precisely as defendant had instructed and authorized it to do, and when it was so organized, the entire amount of the capital stock of $100,000 was paid to the Rock Island Railroad Company for the purchase of the land described, and the title taken in the name of the corporation. Obviously, the principles of natural justice require defendant to respond on this obligation in accordance with the finding of the jury —that is, as for a subscription to the stock of the plaintiff corporation. The promise of defendant, made in consideration of the mutual promises of the 127 other persons who signed the preliminary paper with him, inured to the benefit of the corporation subsequently formed, and in turn, of course, to the benefit of all the subscribers. In this sense it is said to be a trilateral contract. [See 26 Am.

& Eng. Ency. Law (2 Ed.), 902; Shelby Co. Ry. Co. v.
Crow, 137 Mo. App. 461, 119 S. W. 435.]

In such circumstances the subscription is regarded
as a continuing proposal to the corporation which is
contemplated by the parties, and when the corporation
is called into existence and accepts the proposal, the
minds of the contracting parties meet and the con-
tract becomes obligatory. It is mere casuistry, as
said by Judge Thompson in his work on corporations,
to say that the contract can never become obligatory
because there are not at the time it is made two con-
tracting parties. [See 1 Thompson, Private Corpora-
tions, sec. 1165. See, also, 26 Am. & Ency. Law (2
Ed.), 902, 903; 1 Cook on Corporations (7 Ed.), sec-
tions 71-75, inclusive; Shelby Co. Ry. Co. v. Crow, 137
Mo. App. 461, 119 S. W. 435; The Peninsular Ry. Co.
v. Duncan, 28 Mich. 130.] Here, though defendant did
not actually subscribe and acknowledge the articles of
agreement, he nevertheless was represented therein
and thereabout by his agent, the committee, consisting
of Mr. Wade, Mr. Huttig, Mr. Brookings, Mr. Bixby,
Judge Seddon and Mr. Catlin. These gentlemen ef-
fected the organization of the company—that is, caused
the plaintiff corporation to be organized precisely as
they were authorized to do—and defendant is to be
regarded as being present then and there through them
participating in all they did. In this view he is es-
topped from denying the obligation of a shareholder
therein.

In Newland Hotel Co. v. Wright, 73 Mo. App. 240,
it appeared that defendant subscribed a preliminary
paper with many others, looking to the organization
of a corporation under the identical statutes here in-
volved—that is, the statute pertaining to the organiza-
tion of manufacturing and business companies. The
company was subsequently formed in accordance with
the purpose of the parties, but defendant did not sub-
scribe the articles of agreement, and he repudiated his

obligation as a stockholder on that ground. But the evidence revealed that he attended a meeting of the corporators preliminary to the organization and joined with them in appointing nine persons out of the fifty-three subscribers to formally incorporate the company and subscribe to the articles. The court declared defendant estopped on these facts from disputing his obligation as a shareholder, for though he had not subscribed the articles, he had authorized others to proceed in that behalf for him. The judgment was obviously just and declared what we conceive to be the correct principle of law on the subject.

So, too, in the case of Business Men's Assn. v. Williams, 137 Mo. App. 575, 119 S. W. 439, it appeared defendant had signed a preliminary subscription paper, along with many others, to the end of organizing a corporation which subsequently came into being under the identical statutes here involved. In such preliminary subscription paper, defendant authorized the first board of directors to represent him as his agent in effecting the incorporation of the company. It appeared that the corporation was organized in accordance with such authority conferred on those who constituted the first board of directors and twenty-five persons of the larger number who had signed the preliminary paper subscribed and acknowledged the articles of agreement. Subsequently defendant paid ten dollars on his stock subscription, and we declared that this payment alone would suffice to estop him—that is as a ratification—to dispute the relation of stockholder. But we declared, too, separate and apart from the matter of the ten dollar payment and the ratification it evinced, that he was estopped, in the suit of the corporation so organized, on the subscription contract for the price, to dispute the fact of his being a subscriber to its stock, for the reason that he participated in the proceedings organizing the company through the members of the first board of directors whom he had ap-

pointed by provision in the preliminary paper to effect, its organization.

Those cases are precisely in point here, in so far as the principle is concerned, and it is obvious that defendant is estopped from denying his relation of stockholder in the corporation so formed at his instance by the agent he appointed to do so. In this connection, see, also, for an application of the same principle, a decision of our Supreme Court in the case of Central Plank Road Co. v. Clemens, 16 Mo. 359, 365; also, Turnpike Road Co. v. McConoby, 16 Serg. & R. (Pa.), 140. Also, for an application of the principle where the corporator acts for himself, see Fair Assn. v. Walker, 83 Mich. 386.

It does not appear that any stock in the plaintiff corporation has thus far been delivered to defendant, though plaintiff offered to show that it was tendered, and the evidence was excluded on defendant's objection. However this may be, the fact is unimportant, for the certificate of stock amounts to no more than evidence of the right of the stockholder to enjoy the benefits of and participate in the corporate affairs. It suffices for a recovery of the subscription price at the suit of the corporation to show a contract of subscription, or facts affording an estoppel on which the relation of shareholder arises, without regard to the tender or delivery of the stock, for such is not due until the subscription price is paid. [See Business Men's Assn. v. Williams, 137 Mo. App. 575, 588, 589, 119 S. W. 439; Schaeffer v. Missouri Home Ins. Co., 46 Mo. 248; 1 Cook on Corporations (7 Ed.), section 192.]

But it is argued, though such be true, the plaintiff corporation may not recover here as for the subscription for shares, because all of the capital stock is fully paid up and was at the time of its organization. It is said, this being true, plaintiff company is without any interest whatever in the subject-matter of the suit,

De Giverville Land Co. v. Thompson.

and the statute (section 1729, Revised Statutes 1909) requires that every action shall be prosecuted in the name of the real party in interest. But that section says, too, "except as otherwise provided in the next succeeding section." The next succeeding section (1730) authorizes a suit to be prosecuted by the trustee of an express trust without joining with him the persons for whose benefit the suit is prosecuted, and provides, too, that a trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom or in whose name a contract is made for the benefit of another. It is the established rule of decision under this statute that a contract made between two persons for the benefit of a third may be sued to a recovery, either by the person with whom it was made or by the third party for whose benefit it is designed to yield. [See Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198; Snider v. Adams Express Co., 77 Mo. 523; Harney v. Dutcher, 15 Mo. 89.] It is said, too, the statute enlarges the term "trustee of an express trust" so as to include, not only those who are such trustees under the ordinary rules of equity, but those in whose name contracts are made for the benefit of third persons. [See Geer v. Boston, etc., Zinc Co., 126 Mo. App. 173, 177, 103 S. W. 151.]

Obviously, the contract made by defendant with plaintiff corporation for shares of its capital stock may be sued upon to recover the subscription price by plaintiff corporation, for the reason the contract was entered into with it, as through an offer and acceptance, on the corporation coming into existence, on which the relation of shareholder at once arose.

But it is said the articles of agreement recite, as they do, that the entire capital stock is fully paid up and was at the time of the organization of the company and the money in the hands of the first board of directors. This is true; but the evidence goes to show that the payment of $2500 was arranged by the com-

mittee above mentioned, who represented the defendant and all other subscribers to the preliminary paper, in order to effectuate the purpose designed and organize the corporation at once so as to purchase the land. All other subscribers paid in the several amounts of their respective subscriptions, and $97,500 was on hand, while it was essential to have, at once, the full $100,000 of capital subscribed. The committee representing defendant and all others of the 128 subscribers arranged with an adjoining property owner to advance, for the benefit of the venture, $2500 and thus supply the amount of defendant's subscription. So it is the committee, representing defendant and the other subscribers, who are shareholders in the plaintiff company, have caused to be advanced $2500 for the benefit of all concerned. The promise of defendant to pay plaintiff the subscription money obviously is not alone for the benefit of plaintiff, the corporation, but it is for the benefit, too, of all of those persons who joined in the venture by subscribing the subscription paper with him, and the committee in so supplying the funds on defendant's subscription represented all of these, for such committee was as much the agent of every other subscriber under the very terms of the preliminary paper as of the defendant. It appears, therefore, that the promise of defendant to pay the subscription price, though directly to plaintiff, on its acceptance was for the benefit of all of the subscribers as well, on the theory of a trilateral contract. This being true, it is entirely clear that plaintiff may maintain this suit as a trustee of an express trust under the statute, for though the contract of defendant was made with the plaintiff corporation, it was for the benefit as well of the other subscribers, whom the committee represented in raising the money to consummate the corporation lest the venture should fail. In this view, defendant may be required to pay on the subscription contract so as to compensate those whom the committee repre-

sented in causing the advancement of the money ex-
pended in defraying his portion of the burden.

Manifestly the judgment is for the right party and
it should be affirmed. It is so ordered. *Reynolds,
P. J.,* and *Allen, J.,* concur.