Peoria Investment Corporation, Appellee, v. Nellie L. Hoagland, Executrix of Last Will and Testament of William H. Hoagland, Deceased, Appellant.

Gen. No. 9,338.

Opinion filed April 20, 1939.

CHESTER F. BARNETT and E. E. HORTON, both of Peoria, for appellant.

EAGLETON & EAGLETON, of Peoria, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

In February, 1931, the State Trust and Savings Bank of Peoria, a banking corporation, failed and was taken in charge by the auditor of public accounts who was contemplating the appointment of a receiver and the liquidation of the bank. William H. Hoagland, now deceased, and whose executrix now appears as defendant, for many years was a stockholder, director and one of the vice-presidents of the bank when the bank failed. The officers of the bank and the auditor formulated and agreed upon a plan to protect the depositors of the bank and to save its stockholders from a stock assessment. Under the plan, a new bank was to be organized, which it was understood was to be named the Jefferson Trust and Savings Bank of Peoria, with a paid-in capital of $200,000 and a paid-in surplus of $100,000. The new bank was to assume the deposit liability of the old bank, and was to select the best assets of that bank equal to the liability thus assumed. The above requirement of the plan was met. No question is raised as to the legal organization of the new bank.

It was also an essential part of the plan that before the new bank was incorporated, that a corporation should be formed under the general incorporation law of the State of Illinois with a capital of $200,000, all of which was to be paid in cash to the State Trust and Savings Bank of Peoria for that amount of slow assets

of the failed bank. The remaining assets of the State Trust and Savings Bank of Peoria were to be deposited in a fund for three years, to guarantee the assets selected by the new bank, the residue, if any, of such guarantee fund to belong to the Peoria Investment Corporation.

Before the organization of the new corporation, which was to be named the Peoria Investment Corporation, William H. Hoagland subscribed for 40 shares of its stock, for which he has not paid. The Peoria Investment Corporation, it is alleged, was incorporated on April 18, 1931. The total capital stock of the Peoria Investment Corporation was paid by subscribers other than Mr. Hoagland. On December 31, 1931, the Peoria Investment Corporation brought suit in the circuit court of Peoria county to enforce the subscription liability of Hoagland. A trial without a jury resulted in a judgment for the plaintiff for $4,000 against the executrix of the will of said Hoagland. The appeal is by the executrix.

One assignment of error of the appellant is: ''An action upon a stock subscription will not lie where the subscription agreement fixes no time for payment, where it was not preceded by a proper demand, and suit is instituted less than the statutory period of twenty days following an attempted demand by mail.'' The minutes of the corporation were introduced in evidence at the trial, and show that the board of directors, by a proper resolution, declared that the entire authorized amount of stock of the corporation has been subscribed, and that a demand be made forthwith, for payment of such from the subscribers who had not already paid. At a later date, the board of directors passed another resolution, in which the firm of Shurtleff and Niehaus, attorneys, were to be employed by the corporation, and authorized to make demand for unpaid subscriptions, and proceed against anyone, who

had not paid in full. The evidence shows that the firm of Shurtleff and Niehaus sent a written notice to William H. Hoagland demanding that he pay his subscription to the Peoria Investment Corporation. It is argued by the appellants, that this is not in compliance with the statute which was in force in regard to the stock subscriptions, under the Corporation Act, and claim no demand was made for the subscribed stock 20 days before this suit was started. They cite the case of *Rockford Metal Specialty Co. v. Wester,* 234 Ill. App. 260, as sustaining this contention and call our attention to the fact that the case was decided by this court. An examination of that case disclosed that the facts are entirely different from the present one. The suit was not on the original subscription for incorporation of a new company, but for increasing the capital stock of the corporation. In the case of *Packard De Luxe Lines, Inc. v. Hudson,* 248 Ill. App. 579, the court, in discussing the liability of a subscriber for capital stock in a corporation, used this language:

"In support of the defense plaintiff in error relies upon section 28, Cahill's St. ch. 32, ¶ 28, pertaining to the issue of stock, and section 32, Cahill's St. ch. 32, ¶ 32, relating to payments of subscriptions, of the General Incorporation Act. But we think there can be no doubt that said paragraph 28 applies only to additional stock authorized to be issued subsequent to the stock specified in the statement of incorporation as proposed to be issued at once, and to an increase of the original capitalization of the corporation, and that paragraph 32 has reference only to stock subscription payable in instalments. Nothing is said in the subscription of defendant, as it appears in the statement of incorporation, as to when the balance of the subscriptions are to be paid. On completion of the incorporation the charter contemplates that the stock so subscribed for shall issue at once and shall be paid

for as issued unless made payable in instalments by action of the board of directors.'' To the same effect is the case of *Hankel v. East & West Pub. Co.,* 239 Ill. App. 236. We think that the above authorities set forth the correct rule, and that the statute is not applicable to the facts in this case. Whether the demand was a proper one, is immaterial, as none is necessary before bringing the suit.

The evidence shows that payment was made of the full amount of the capital stock to the appellee before the commencement of the suit. The fact that this payment was made by another person, other than the defendant, does not release him from the obligation on his subscription for capital stock. The evidence shows that Hoagland refused to pay for the stock issued for the organization of the corporation. Before the Peoria Investment Corporation could incorporate, it was imperative that it have $200,000 in cash. This was one of the requirements of the auditor before the new bank could be opened. In order to get the $200,000 in cash, another party, J. C. Wynd, advanced the money for Mr. Hoagland and a stock certificate was made out to him for the stock that Mr. Hoagland had subscribed for. Later, the Peoria Investment Corporation returned the $4,000 to Wynd which he had advanced for Hoagland's stock, and the stock was held ready to be delivered to Mr. Hoagland. In the case of *De Giverville Land Co. v. Thompson,* 190 Mo. App. 682, 176 S. W. 409, a group of people formed a company for the purchase of land in the city of St. Louis. The land in question was being used and operated by the Rock Island Railroad Company, and on account of switch engines, trains, and smoke, it was becoming a nuisance to the adjoining property owners. They decided to purchase a large tract of this land from the company, and to subdivide it into lots, and sell it (subject to restrictions) to the public generally. John W. Thomp-

son signed a subscription to take stock in the corporation, and then refused to carry out his part of the contract. In order to get the required amount of capital so the company could be incorporated, another land owner adjoining this tract of land, but not a subscriber to the original stock subscription, advanced $2,500 so that the company would have the required capital for incorporation. The company was incorporated and the money was returned to the adjoining property owner, and upon Thompson's refusal to pay his subscription to the corporation, a suit was started. The court has this comment to make: "The committee in good faith went forward and organized a corporation precisely as defendant had instructed and authorized it to do, and when it was so organized the entire amount of the capital stock of $100,000 was paid to the Rock Island Railroad Company for the purchase of the land described, and the title taken in the name of the corporation. Obviously the principles of natural justice require defendant to respond on this obligation in accordance with the finding of the jury; that is, as for a subscription to the stock of the plaintiff corporation. The promise of defendant, made in consideration of the mutual promises of the 127 other persons who signed the preliminary paper with him, inured to the benefit of the corporation subsequently formed, and in turn, of course, to the benefit of all the subscribers." The Supreme Court of Missouri held that when the adjacent landowner had advanced the amount which Thompson had agreed to pay for capital stock of said company, and the company after being incorporated returned the money so advanced to the adjacent landowner, he had been acting as trustee for Thompson, and that Thompson could not escape liability on his subscription for stock in the corporation. To the same effect is the case of *Somerset Nat. Banking Co.'s Receiver v. Adams*, 24 Ky. L. Rep. 2083, 72

S. W. 1125. The payment of the full amount of the subscribed capital stock, by someone else besides the defendant, William Hoagland, did not release him from liability upon his subscription for stock in this corporation.

It is insisted that the appellant, William H. Hoagland, was not liable on his subscription, until the company is a *de jure* corporation, and that the powers vested in the appellee company could be exercised only by a corporation organized under the General Banking Act. The Peoria Investment Corporation was a *de jure* corporation duly organized, as shown from the record in this case, exhibits the subscription list, the application to the secretary of State to form such a corporation, a certificate of incorporation, and the certificate of the secretary of State, as to the articles of incorporation of the Peoria Investment Corporation. It is also insisted that the Peoria Investment Corporation was organized for a different purpose than that anticipated in the stock subscription agreement. The subscription agreement does not pretend to designate the kind of corporation which was to be organized, except the name of the company, the par value of the stock and the capital stock of the same. We see no merit in these contentions.

It is averred that the court erred in allowing J. W. Glascow to testify, when the suit was being defended by the administratrix of William H. Hoagland. An examination of the record discloses that there was no objection made to Mr. Glascow's competency as a witness, until he was called in rebuttal, at which time he had nearly completed his testimony. The attorney for Mr. Hoagland, when Mr. Glascow was called in chief, asked permission to interrogate the witness in regard to his competency. He was given permission to do so, and examined the witness, Glascow. No objection was made in regard to the incompetency of Glascow as a

witness. Mr. Glascow was dismissed from the witness stand, and another witness heard, but Mr. Glascow returned, and continued to give his testimony with no objection on the part of the defendant. Under the circumstances, we think the appellant is not in a position to raise the question of the incompetency of this witness.

The appellee filed a motion to strike a part of the appellant's ''Statement, Brief and Argument.'' The appellant has filed objections to the motion, and the same was taken with the case. We have examined the motion and suggestions in opposition thereto, and have decided that the same should be denied. The motion is therefore denied. We think, that under the evidence as disclosed by the record in this case, there is a clear legal liability of the appellant to pay the subscription price for this stock.

Complaint is made that the court admitted incompetent evidence on behalf of the plaintiff, and refused to admit competent evidence on behalf of the defendant. We think on the whole, that the rulings of the court were fair and proper.

The appellee has filed cross-errors claiming the court erred in refusing to allow interest of 5 per cent on the $4,000 judgment from October 26, 1931, to the date of the judgment, February 4, 1938. We have examined the authorities cited by the appellee, as sustaining their contention, but we are not disposed to disturb the finding of the trial court, that the plaintiff was not entitled to interest on the unpaid subscription. We find no reversible error in the case, and the judgment of the trial court is affirmed.

*Affirmed.*